IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LULA WILLIAMS, *et al.*,　　　　　　）
　　　Plaintiffs,　　　　　　　　　　 ）
　　　　　　　　　　　　　　　　　　）
　　　v.　　　　　　　　　　　　　　）　　　　Civil No. 3:19cv085 (REP)
　　　　　　　　　　　　　　　　　　）
MICROBILT CORPORATION, *et al.*,　　 ）
　　　Defendants.　　　　　　　　　　 ）
_____）

## REPORT AND RECOMMENDATION

Plaintiffs Lula Williams ("Williams"), Gloria Turnage ("Turnage"), George Hengle

("Hengle") and Dowin Coffy ("Coffy") (collectively, "Plaintiffs") bring this action against

Defendants MicroBilt Corporation ("MicroBilt"), Philip Burgess ("Burgess"), Matt Martorello

("Martorello") and Karrie Wichtman ("Wichtman") (collectively, "Defendants"), alleging

various violations of the Fair Credit Reporting Act ("FCRA" or the "Act"), 15 U.S.C. §§ 1681 *et*

*seq.* This matter comes before the Court for a Report and Recommendation pursuant to 28

U.S.C. § 636(b)(1)(B) on the Motion to Dismiss for Lack of Personal Jurisdiction and

Insufficient Service of Process, or in the Alternative, Motion to Transfer Venue (ECF No. 15)

filed by MicroBilt and Burgess; the Motion to Dismiss for Lack of Personal Jurisdiction (ECF

No. 19), Motion to Dismiss for Improper Venue (ECF No. 20) and Motion to Dismiss for Failure

to State a Claim (ECF No. 21) filed by Martorello; and, the Motion to Dismiss for Lack of

Personal Jurisdiction (ECF No. 38) and Motion to Dismiss for Failure to State a Claim (ECF No.

40) filed by Wichtman.  For the reasons set forth below, the Court recommends:  (1) that

Burgess's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 15) be GRANTED and

Count Four of Plaintiffs' Complaint as to Burgess be DISMISSED WITHOUT PREJUDICE; (2)

that Burgess's Motion to Dismiss for Insufficient Service of Process be DENIED AS MOOT; (3) that MicroBilt's Motion to Transfer Venue (ECF No. 15) be DENIED WITHOUT PREJUDICE; (4) that Martorello's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 19), Motion to Dismiss for Improper Venue (ECF No. 20) and Motion to Dismiss for Failure to State a Claim (ECF No. 21) be DENIED; and, (5) that Wichtman's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 38) and Motion to Dismiss for Failure to State a Claim (ECF No. 40) be DENIED.

## I.    BACKGROUND

To the extent that Defendants challenge the plausibility of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will accept Plaintiffs' well-pleaded factual allegations as true, though the Court need not accept Plaintiffs' legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Similarly, to the extent that Defendants challenge the Court's personal jurisdiction over them "on the basis only of motion papers[,] . . . the court must construe all relevant pleading allegations in the light most favorable to [Plaintiffs], assume credibility, and draw the most favorable inferences for the existence of jurisdiction," *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989), though the Court need not consider only Plaintiffs' proof of personal jurisdiction to decide which inferences it will make, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993).  And the Court may consider evidence outside of the pleadings in ruling on a motion for improper venue, though the Court will also draw all inferences in favor of Plaintiffs. *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006).  Based on these standards, the Court accepts the following facts.

## A.   Factual Allegations

On June 22, 2017, Plaintiffs filed a complaint against Big Picture Loans, LLC ("BPL"),

Martorello and associated parties, alleging that the defendants operated a tribal lending scheme

in violation of federal and state law (the "BPL Litigation"). *Williams v. Big Picture Loans, LLC*,

Civil No. 3:17cv461-REP (E.D. Va.); (Compl. (ECF No. 1) ¶ 33.)  Specifically, in the BPL

Litigation, Plaintiffs allege that Martorello approached the Lac Vieux Desert Band of Lake

Superior Chippewa Indians to establish BPL, an entity that issued high-interest loans to Plaintiffs

and a putative class of similarly situated debtors.  (Compl. ("BPL Compl.") (3:17cv461, ECF

No. 1) ¶ 3.)  Wichtman, an attorney, represented BPL and associated parties in the BPL

Litigation from July 28, 2017, (App. to Qualify as a Foreign Atty. Under Local Civ. R. 83.1(D)

and Local Crim. R. 57.4 (3:17cv461, ECF No. 7) at 1), until August 21, 2018, (Order

(3:17cv461, ECF No. 163)).  MicroBilt is not a party in the BPL Litigation, but operates as "a

specialty 'consumer reporting agency' . . . and a 'reseller of consumer reporting services' . . . as

such terms are defined under the [FCRA]."  (Cert. of Walter Wojciechowski in Supp. of

MicroBilt Corp.'s Mot. to Transfer ("MicroBilt Decl.") (ECF No. 16-2) ¶ 3.)  Burgess founded

MicroBilt in 2000 and currently serves as a consultant for the company.  (Decl. of Philip N.

Burgess, Jr. in Supp. of His R. 12(b) Motions to Dismiss or Transfer ("Burgess Decl.") (ECF No.

16-1) ¶¶ 3-4.)

On or around July 7, 2017, at Martorello's request, Burgess procured Plaintiffs'

consumer reports from MicroBilt and forwarded them to Wichtman.  (Compl. ¶ 34.)  Burgess,

Martorello and Wichtman allegedly used Plaintiffs' consumer reports as part of the BPL

Litigation, including to make arguments regarding Plaintiffs' standing and their adequacy to

represent a putative class of consumers.  (Compl. ¶ 35.)  During discovery in the BPL Litigation,

Plaintiffs' counsel became aware of a text message conversation between Martorello and Wichtman in which Martorello told Wichtman "Phil [Burgess] from [M]icrobilt is sending you the plaintiffs['] subprime credit history . . . he says they appear 'very active.' Which sounds unlike someone harmed." (Compl. ¶ 38.)  Wichtman responded "Got it!  Thanks," and Martorello responded "at your service." (Compl. ¶ 38.)

Separately, in early 2018, Williams requested a copy of her consumer report from MicroBilt, which MicroBilt provided on March 8, 2018. (Compl. ¶¶ 39-40.)  However, the report that MicroBilt provided to Williams did not disclose the July 2017 inquiry by Burgess. (Compl. ¶ 41.)

### B.   Plaintiffs' Complaint

On February 11, 2019, Plaintiffs filed their Complaint (ECF No. 1) against Defendants, setting forth four counts for relief.  In Count One, Plaintiffs allege that MicroBilt violated 15 U.S.C. § 1681b(a) "by furnishing the Plaintiffs' consumer reports to . . . Burgess, Martorello, and Wichtman without a permissible purpose to do so." (Compl. ¶ 44.)  Similarly, in Count Two, Plaintiffs allege that MicroBilt violated § 1681e(a) by furnishing their consumer reports to the other Defendants for an impermissible purpose, and by failing to maintain reasonable procedures to limit the furnishing of consumer reports to only those purposes enumerated under § 1681b. (Compl. ¶ 49.)  Under both counts, Plaintiffs allege that MicroBilt's violations of the Act damaged their credit scores, violated their privacy and caused them emotional and mental distress. (Compl. ¶¶ 45, 50.)

In Count Three, Williams alleges that MicroBilt denied her important information by providing her with an incomplete consumer report in violation of § 1681g(a), including an incomplete list of each person or entity that procured a copy of her report during the previous

4

year. (Compl. ¶¶ 54-55.) Finally, in Count Four, Plaintiffs allege that Burgess, Martorello and Wichtman violated § 1681b(f) by obtaining and using their credit reports without a permissible purpose. (Compl. ¶ 59.)

Under all four counts, in addition to actual damages, statutory damages, fees and costs, Plaintiffs seek punitive damages pursuant to § 1681n, alleging that Defendants acted willfully in violating the Act. (Compl. ¶¶ 46-47, 51-52, 56-57, 61-62.) Alternatively, Plaintiffs seek recovery for Defendants' negligent conduct pursuant to § 1681o. (Compl. ¶¶ 46, 52, 56, 61.)

## C.     Defendants' Motions

In response to Plaintiffs' Complaint, on April 12, 2019, MicroBilt and Burgess (the "MicroBilt Defendants") filed a Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (ECF No. 15), moving to dismiss Count Four as to Burgess for lack of personal jurisdiction pursuant to Rule 12(b)(2) and insufficient service of process pursuant to Rule 12(b)(5), and to transfer the venue of the claims against the MicroBilt Defendants to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). (Mem. of L. in Supp. of Burgess's Mot. to Dismiss, or in the Alternative, Burgess & MicroBilt's Mot. to Transfer Venue ("MicroBilt Mem.") (ECF No. 16) at 5-14.) Plaintiffs filed their Memorandum in Opposition to the MicroBilt Defendants' Motion on May 14, 2019, (Pls.' Mem. in Opp. to Def. Burgess's Mot. to Dismiss, or Alternatively, Burgess & MicroBilt's Mot. to Transfer Venue ("Pls.' MicroBilt Resp.") (ECF No. 42)), and the MicroBilt Defendants filed their Reply on May 29, 2019, (Reply Mem. of L. in Further Supp. of Burgess's Mot. to Dismiss, or in the Alternative, Burgess's and MicroBilt's Mot. to Transfer Venue ("MicroBilt Reply") (ECF No. 52)), rendering the MicroBilt Defendants' Motion now ripe for review.

Separately, on April 12, 2019, Martorello filed three Motions to Dismiss (ECF Nos. 19-21), moving to dismiss Count Four as to him for lack of personal jurisdiction pursuant to Rule 12(b)(2), improper venue pursuant to Rule 12(b)(3) and failure to state a claim pursuant to Rule 12(b)(6). (Mem. of L. in Supp. of Def. Matt Martorello's Mot. to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12 ("Martorello Mem.") (ECF No. 22) at 3-11.) Plaintiffs filed their Memorandum in Opposition to Martorello's Motions on May 14, 2019, (Pls.' Mem. in Opp. to Def. Matt Martorello's Mot. to Dismiss under 12(b)(2), 12(b)(3) & 12(b)(6) ("Pls.' Martorello Resp.") (ECF No. 43)), and Martorello filed his Reply on May 28, 2019, (Def. Matt Martorello's Reply in Supp. of Mot. to Dismiss the Compl. Pursuant to Fed. R. Civ. P. 12 ("Martorello Reply") (ECF No. 51)), rendering Martorello's Motions now ripe for review.

Finally, on May 3, 2019, Wichtman filed two Motions to Dismiss (ECF Nos. 38, 40), moving to dismiss Count Four as to her for lack of personal jurisdiction pursuant to Rule 12(b)(2) and failure to state a claim pursuant to Rule 12(b)(6). (Def. Karrie Wichtman's Mem. in Supp. of Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(2) ("Wichtman 12(b)(2) Mem.") (ECF No. 39) at 4-8; Def. Karrie Wichtman's Mem. in Supp. of Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Wichtman 12(b)(6) Mem.") (ECF No. 41) at 4-6.) Plaintiffs filed their Memoranda in Opposition to Wichtman's Motions on May 17, 2019, (Pls.' Mem. in Opp. to Def. Karrie Wichtman's Mot. to Dismiss Compl. Under Fed. R. Civ. P. 12(b)(2) ("Pls.' Wichtman 12(b)(2) Resp.") (ECF No. 44); Pls.' Opp. to Def. Karrie Wichtman's Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6) ("Pls.' Wichtman 12(b)(6) Resp.") (ECF No. 45)), and Wichtman filed her Replies on May 28, 2019, (Def. Karrie Wichtman's Reply Br. in Supp. of Mot. to Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(2) ("Wichtman 12(b)(2) Reply") (ECF No. 49); Def. Karrie Wichtman's Reply Br. in Supp. of Mot. to Dismiss Compl.

Pursuant to Fed. R. Civ. P. 12(b)(6) ("Wichtman 12(b)(6) Reply") (ECF No. 50)), rendering Wichtman's Motions now ripe for review.

In total, the Court has before it: (1) three motions to dismiss for lack of personal jurisdiction filed by Burgess, Martorello and Wichtman, (ECF Nos. 15, 19, 38); (2) a motion to dismiss for insufficient service of process filed by Burgess, (ECF No. 15); (3) a motion to transfer venue filed by MicroBilt and, in the alternative, Burgess, (ECF No. 15), and a motion to dismiss for improper venue filed by Martorello, (ECF No. 20); and, (4) two motions to dismiss for failure to state a claim filed by Martorello and Wichtman, (ECF Nos. 21, 40). Because Defendants' jurisdictional and venue challenges determine the appropriate court to hear Plaintiffs' claims, the Court will first consider those challenges. *See Docs Billing Sols., LLC v. GENETWORx LLC*, 2018 WL 4390786, at *2 (E.D. Va. Aug. 30, 2018) (noting that jurisdictional challenges — in that case, a motion to remand pursuant to a forum selection clause — should take precedence over a 12(b)(6) challenge (citing *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 680 (4th Cir. 2018)). Only if the Court finds the exercise of personal jurisdiction over Martorello and Wichtman proper and this venue appropriate will the Court address Martorello and Wichtman's Rule 12(b)(6) arguments.

## II.     RULE 12(b)(2) MOTIONS

Burgess, Martorello and Wichtman all move to dismiss Plaintiffs' sole claim against them, Count Four, for lack of personal jurisdiction pursuant to Rule 12(b)(2). Because "each defendant's contacts with a forum state must be assessed individually," the Court will consider Burgess, Martorello and Wichtman's Rule 12(b)(2) challenges in turn. *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 527 (E.D. Va. 2009) (citations omitted).

A.     **Standard of Review**

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to challenge a court's

personal jurisdiction over him. Fed. R. Civ. P. 12(b)(2). "[W]hen, as here, the court addresses

the question [of personal jurisdiction] on the basis only of motion papers, supporting legal

memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to

make a prima facie showing of a sufficient jurisdictional basis in order to survive the

jurisdictional challenge." [1] *Combs*, 886 F.2d at 676.  In deciding whether a plaintiff has made a

prima facie showing of personal jurisdiction based only on the papers presented, a court "must

construe all relevant pleading allegations in the light most favorable to the plaintiff, assume

credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

However, "a plaintiff cannot rest on [the allegations in her complaint] in the face of specific

contradictions contained in [the] defendant's motion and support[ing] affidavits." *In re Arthur

Treacher's Franchisee Litig.*, 92 F.R.D. 398, 410 n.11 (E.D. Pa. 1981).

Determinations of personal jurisdiction require a two-step inquiry.  First, a court must

find that the long-arm statute of the forum state authorizes the service of process to the

defendant, or, in federal question cases, that the federal statute relied upon by the plaintiffs

provides for nationwide service of process to any defendant. *See Omni Capital Int'l, Ltd. v.

Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105 (1987) (holding that "whether a defendant is

amenable to service [constitutes] a prerequisite to [a court's] exercise of personal jurisdiction").

Then, the court must find that the exercise of personal jurisdiction over the defendant satisfies

---

[1]     Neither Burgess, Martorello nor Wichtman requested an evidentiary hearing, or that the
Court wait to receive evidence of personal jurisdiction at trial.  Moreover, the Court finds that a
hearing will not materially aid in the decisional process.  Thus, the Court will decide Defendants'
personal jurisdiction challenges using Plaintiffs' Complaint and the parties' pleadings, including
the exhibits and appendices attached thereto.

8

the requirements of the Due Process Clause of the Fifth or Fourteenth Amendments, depending on which statute authorizes the service of process. *Id.*

When the federal statute relied upon by the plaintiffs provides for nationwide service of process, the Due Process Clause of the Fifth Amendment — not the Fourteenth Amendment — determines the extent of a court's personal jurisdiction. *Bd. of Trs. Sheet Metal Workers' Nat'l Pension Fund v. McD Metals, Inc.*, 964 F. Supp. 1040, 1044 (E.D. Va. 1997). The Fifth Amendment provides for a much broader exercise of personal jurisdiction than the Fourteenth Amendment, requiring only "sufficient aggregate contacts with the United States as a whole." *Id.* Conversely, "[i]n federal question actions based on a statute that does not provide for nationwide jurisdiction, a federal court exercises personal jurisdiction over a defendant in the manner consistent with state law," including the limitations of the forum state's long-arm statute and the Fourteenth Amendment's Due Process Clause. *Moseley v. Fillmore Co.*, 725 F. Supp. 2d 549, 559 (W.D.N.C. 2010) (citing *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997) and Fed. R. Civ. P. 4(k)(1)(A)); *see ESAB Grp., Inc.*, 126 F.3d at 622 (explaining that the "*in personam* jurisdiction of a state court is limited by that state's laws and by the Fourteenth Amendment").

Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Fourteenth Amendment's Due Process Clause, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries become one." *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990). The Due Process Clause of the Fourteenth Amendment requires that a defendant "have certain minimum contacts with [the forum] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

9

310, 316 (1945).  Within those parameters, a court may find that it has either general or specific personal jurisdiction over a defendant.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).  General personal jurisdiction exists over defendants with "continuous and systematic contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred."  *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).  Otherwise, a court may exercise only specific personal jurisdiction if a defendant's minimum contacts with the forum state form the basis for the claims in question.  *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).

With respect to specific personal jurisdiction, the Fourth Circuit has established a three-part test, requiring trial courts to consider:  "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal quotations and citations omitted).  Alternatively, because personal jurisdiction constitutes an individual right, a party may waive that right and submit to the personal jurisdiction of a court by appearance or by providing express or implied consent in "[a] variety of legal arrangements."  *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703-04 (1982).

### B.    Burgess's Rule 12(b)(2) Motion

In support of his Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 15), Burgess argues that "he never made any communications or sent any materials to Virginia; has no business interest in Virginia, and has not been in Virginia for any purpose related to the allegations of the Complaint (or otherwise) in many years."  (MicroBilt Mem. at 6 (citations

10

omitted).)  Specifically, Burgess affirms that he resides in Princeton, New Jersey, and resigned

from MicroBilt in January 2007, after founding the company in 2000.  (Burgess Decl. ¶¶ 1, 3.)

Burgess states that Walter Wojciechowski served as the President and Chief Executive Officer of

MicroBilt during the relevant period.  (Burgess Decl. ¶ 3.)

After leaving MicroBilt, Burgess became a consultant for the company, focusing

"primarily on product development, data acquisition, mergers and acquisitions and business

development."  (Burgess Decl. ¶ 4.)  Burgess provided his services to MicroBilt at MicroBilt's

Princeton, New Jersey headquarters.  (Burgess Decl. ¶ 4.)  Burgess avers that any

communication between him and Martorello would have occurred while he was in New Jersey or

traveling through locations other than Virginia.  (Burgess Decl. ¶ 8.)  And Burgess adds that he

sent any communications relevant to Plaintiffs' Complaint from New Jersey, not Virginia, and

that anything he sent would have been received by someone outside of Virginia.  (Burgess Decl.

¶¶ 8, 11.)  Burgess maintains that he otherwise has had no business or personal contacts with

Virginia "for many years."  (Burgess Decl. ¶ 8.)

Finally, Burgess admits personal knowledge of the consumer reports referred to in

Plaintiffs' Complaint, but affirms that the reports did not constitute "consumer reports" as

defined by the FCRA and instead included only loan information stored in MicroBilt's

"contribution database."  (Burgess Decl. ¶ 9.)  Burgess notes that MicroBilt operates the

contribution database out of both Princeton, New Jersey, and Kennesaw, Georgia.  (Burgess

Decl. ¶ 10.)  Ultimately, Burgess contends that because he "is by no means 'at home' in this

judicial district," and because he otherwise has maintained no contacts with Virginia, the Court

cannot exercise personal jurisdiction over him.  (MicroBilt Mem. at 6-7.)

Plaintiffs respond that the three-factor test for specific personal jurisdiction permits the exercise of jurisdiction over Burgess. (Pls.' MicroBilt Resp. at 9-15.)  First, Plaintiffs contend that Burgess purposefully availed himself of the privilege of conducting activities in Virginia by obtaining from MicroBilt, at Martorello's direction, personal and financial information about Plaintiffs with knowledge that the information would be used against Virginia residents in litigation occurring in Virginia. (Pls.' MicroBilt Resp. at 9-13.)  Plaintiffs argue that Burgess improperly focuses on the contacts that he does not have with Virginia while ignoring the conduct that he intentionally directed into the Commonwealth, which should be the focus of the Court's inquiry.  (Pls.' MicroBilt Resp. at 9 (citing *English Boiler & Tube, Inc. v. Glex Inc.*, 2012 WL 2131895, at *6 (E.D. Va. June 12, 2012)).)

As for the second factor — whether Plaintiffs' claims arise out of Burgess's minimum contacts with Virginia — Plaintiffs contend that Burgess knew that the effects of his actions would be felt in Virginia and that they in fact felt the harm complained of in Virginia, which proves directly related to Burgess's contacts with the state.  (Pls.' MicroBilt Resp. at 13-14.) And Plaintiffs argue that the exercise of personal jurisdiction over Burgess would be constitutionally reasonable, because Burgess fails to argue why this Court constitutes a gravely inconvenient forum.  (Pls.' MicroBilt Resp. at 14-15.)  Plaintiffs add that Virginia has a strong interest in protecting its citizens' rights and that they have an interest in litigating this case in this District, where three of them currently reside.  (Pls.' MicroBilt Resp. at 15.)  Should the Court decide that Plaintiffs have not made a prima facie showing of personal jurisdiction over Burgess, Plaintiffs request that the Court grant limited jurisdictional discovery to "determine the extent of Burgess's contacts with Virginia."  (Pls.' MicroBilt Resp. at 15-16.)

As a preliminary matter, the Court agrees with Burgess that, as a resident of New Jersey who does not maintain "continuous and systematic" contacts with Virginia, he is not at home in this District; therefore, the Court must find that it has specific personal jurisdiction over Burgess. *Mitrano*, 377 F.3d at 407; *see also Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011))).

### 1.   *Plaintiffs Fail to Establish that the FCRA or Virginia's Long-Arm Statute Permit the Exercise of Personal Jurisdiction over Burgess.*

As a predicate to its exercise of personal jurisdiction over Burgess, the Court must first consider whether the federal statute upon which Plaintiffs rely — the FCRA — authorizes nationwide service of process; otherwise, the Court must find that Virginia's long-arm statute authorizes service.  "The FCRA does not authorize nationwide service of process," *Juarez v. Dimon*, 2014 WL 7177544, at *2 (C.D. Ill. Dec. 16, 2014) (citing 15 U.S.C. § 1681p); therefore, Virginia's long-arm statute provides Plaintiffs' only statutory basis for the exercise of personal jurisdiction.

Because Plaintiffs do not refute that Burgess procured and disseminated their consumer reports from and to locations outside of Virginia, (*see* Pls.' MicroBilt Resp. at 10 (conceding that Burgess has had no other contacts with Virginia other than the injuries his conduct caused to Plaintiffs in Virginia)), Plaintiffs must rely on Subsection (A)(4) of Virginia's long-arm statute, which provides that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:"

> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any

other persistent course of conduct, or derives substantial revenue from goods used
or consumed or services rendered, in this Commonwealth[.]

Va. Code § 8.01-328.1(A)(4).[2] Pursuant to this Subsection, "a single act committed outside the

Commonwealth and resulting in tortious injury within is insufficient to confer jurisdiction unless

the defendant has engaged in some persistent course of conduct or derives substantial revenue

from goods used or consumed or services rendered within Virginia." *Darden v. Heck's, Inc.*, 459

F. Supp. 727, 731 (W.D. Va. 1978) (citing *Haynes v. James H. Carr, Inc.*, 307 F. Supp. 1228

(E.D. Va. 1969), *aff'd*, 427 F.2d 700 (4th Cir. 1970)). Indeed, in *Darden*, the Western District of

Virginia recognized that the general rule converging the statutory and constitutional analyses

under Virginia's long-arm statute applies only "where the General Assembly has [not] placed

explicit affirmative limitations on the extent of long-arm jurisdiction . . . as it has in subsection[]

A.4." *Id.* Therefore, to exercise personal jurisdiction over a nonresident defendant pursuant to

Subsection (A)(4), Plaintiffs must make a prima facie showing of both: "(1) a tortious injury in

Virginia caused by an out of state act or omission [by Burgess]; and (2) a relationship between

[Burgess] and [Virginia] which exists in any one of the three ways specified in subsection (4)."

*First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1514 (4th Cir. 1986).

Plaintiffs have satisfied the first requirement of Subsection (A)(4), for their Complaint

sufficiently alleges that Burgess obtained Plaintiffs' consumer reports at Martorello's request

---

[2]     The Court's review of Virginia's long-arm statute finds no other subsection that would
apply under the facts alleged by Plaintiffs. The only other potentially applicable subsection
would be Subsection (A)(3), which provides for personal jurisdiction over an individual who
personally or through an agent causes tortious injury "by an act or omission in this
Commonwealth." § 8.01-328.1(A)(3). However, Plaintiffs do not present evidence or allege that
Burgess injured them through acts or omissions committed in Virginia, because their factual
allegations suggest only that Burgess obtained their reports knowing that they would be used for
an impermissible purpose, not that he misused them in the BPL Litigation. *See Bochan v. La
Fontaine*, 68 F. Supp. 2d 692, 698 (E.D. Va. 1999) (noting that Subsection (A)(3) requires that
both the tortious injury and one element of the alleged tort take place in Virginia).

14

with sufficient knowledge that the reports would be used for a purpose other than those enumerated in § 1681b.  For one, the July 7, 2017 text messages from Martorello to Wichtman support an inference that Martorello had specifically asked Burgess to obtain reports on Plaintiffs' credit history and that Burgess complied with that request.  (*See* Compl. ¶ 38 (quoting July 7, 2017 text message from Martorello to Wichtman stating that "Phil [Burgess] is sending [Wichtman] . . . [Plaintiffs'] subprime credit history").)  Moreover, the text messages recited in Plaintiffs' Complaint suggest that Burgess knew that Martorello requested the reports for use against Plaintiffs in the BPL Litigation, stating:  "[Burgess] says [Plaintiffs] appear 'very active' . . . which sounds unlike someone harmed."  (Compl. ¶ 38.)  Indeed, Burgess admits that Martorello requested the consumer information about which Plaintiffs complain.[3]  (Burgess Decl. ¶ 9.)

By sufficiently alleging that Burgess obtained their consumer reports without a permissible purpose and by affirming that three of them reside in Virginia, Plaintiffs have made a prima facie showing that Burgess committed out-of-state acts that injured them in Virginia, satisfying the first requirement of Subsection (A)(4).  *See Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001) (noting that "mental distress" constitutes the "primary damage" from the impermissible obtainment of a consumer report and is felt where the plaintiff resides); (Decl. of Lula Williams ("Williams Decl.") (ECF No. 42-1) ¶ 3 (affirming that Williams resides

---

[3]    Although Burgess contends that the information that Martorello requested did not constitute a "consumer report" as defined by the FCRA, Burgess neither swears by facts nor presents evidence to support that legal conclusion.  (Burgess Decl. ¶ 9.)  Indeed, the FCRA defines "consumer report" to mean "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living . . . ," 15 U.S.C. § 1681a, and Plaintiffs' Complaint recites texts from Martorello to Wichtman that "[Burgess] . . . is sending you [Plaintiffs'] subprime *credit history*," which appears to fit squarely within the Act's definition of "consumer report," (Compl. ¶ 38 (emphasis added)).

in Richmond, Virginia); Decl. of Gloria Turnage ("Turnage Decl.") (ECF No. 42-2) ¶ 3 (affirming that Turnage resides in Richmond, Virginia); Decl. of George Hengle ("Hengle Decl.") (ECF No. 42-3) ¶ 3 (affirming that Hengle resides in Chester, Virginia).)

However, Plaintiffs fail to present evidence or allegations sufficient to support the inference that Burgess sustained a relationship with Virginia in one of the ways outlined in Subsection (A)(4). Indeed, in their Memorandum in Opposition to Burgess's Motion, Plaintiffs address only the Due Process Clause analysis without considering the specific subsection(s) under Virginia's long-arm statute that authorize the exercise of personal jurisdiction over Burgess. (Pls.' MicroBilt Resp. at 9-15.) Additionally, in arguing that Burgess purposefully availed himself of the privilege of conducting activities in Virginia, Plaintiffs fail to refute Burgess's affirmation that he has maintained no personal or business relationship with Virginia other than allegedly causing an injury in Virginia. (Pls.' MicroBilt Resp. at 10; Burgess Decl. ¶ 8.)

By all but conceding that Burgess maintains no other contacts with Virginia beyond his allegedly injurious conduct, Plaintiffs have not made a prima facie showing that Virginia's long-arm statute permits the exercise of personal jurisdiction over Burgess.

### 2. *Whether the Exercise of Personal Jurisdiction over Burgess Satisfies the Fourteenth Amendment's Due Process Clause Proves Inconsequential.*

Because Plaintiffs fail to make a prima facie showing that Virginia's long-arm statute authorizes the exercise of personal jurisdiction over Burgess, the Court need not consider whether the exercise of personal jurisdiction conforms with the requirements of due process. As the Western District of Virginia noted in *Darden*, the general rule that Virginia's long-arm statute confers personal jurisdiction to the full extent of the Due Process Clause applies with less rigor to Subsection (A)(4), which includes additional requirements imposed by the Virginia

General Assembly. 459 F. Supp. at 731. Consequently, cases may arise in which the exercise of personal jurisdiction satisfies the constitutional protections of the Due Process Clause but not the statutory limitations imposed by Subsection (A)(4). *See Chisholm v. UHP Projects, Inc.*, 1 F. Supp. 2d 581, 585 (E.D. Va. 1998) (rejecting the argument that if the exercise of personal jurisdiction satisfies due process, the requirements of Subsection (A)(4) are automatically met). Indeed, "[t]he Federal Constitution guarantees only a minimum slate of protections [and] States can and do provide individual rights above that constitutional floor." *Kansas v. Carr*, 136 S. Ct. 633, 648 (2016) (citations omitted).

The somewhat unique dichotomy between the potentially more stringent requirements of Subsection (A)(4) and the constitutional minimum established by the Due Process Clause becomes especially apparent in comparing this case with those highlighted by Plaintiffs in their response to Burgess's Motion. In their Response, Plaintiffs rely primarily on *Myers v. Bennett Law Offices*, in which the Ninth Circuit, pursuant to *Calder v. Jones*, 465 U.S. 783, 791 (1984), found that the District of Nevada could exercise personal jurisdiction over a Utah law firm whose employee allegedly requested the plaintiffs' consumer reports for use in litigation against the plaintiffs' business. 238 F.3d at 1071; (Pls.' MicroBilt Resp. at 11-12.) The Ninth Circuit reasoned that, because violations of the FCRA's disclosure provisions "are akin to invasion of privacy cases," a plaintiff sustains the injury from a disclosure violation in his or her domicile. *Id.* at 1074. Therefore, by targeting the Nevada plaintiffs with improper consumer report requests, the Utah law firm intentionally directed its activities into Nevada, thereby satisfying the purposeful availment prong of the personal jurisdiction analysis. *Id.* at 1074-75.

Although addressing nearly identical facts to the ones alleged here, the Court finds *Meyers* distinguishable from this case, because, unlike Virginia's long-arm statute, Nevada's

17

long-arm statute explicitly provides that personal jurisdiction may be exercised "over a party to a civil action *on any basis not inconsistent with* the Constitution of this state or the Constitution of the United States." Nev. Rev. Stat. § 14.065 (emphasis added). By the plain language of its long-arm statute, Nevada extends the personal jurisdiction of its courts to the full extent of the Due Process Clause. The same cannot be said for Virginia's statute. Although courts read Virginia's long-arm statute with the understanding that its purpose "is to extend jurisdiction to the extent permissible under the due process clause," *English & Smith*, 901 F.2d at 38 (citations omitted), "where a statute's plain language is clear and unambiguous, [the] analysis must . . . end with the statute's plain language," *Banco Inverlat, S.A. v. www.inverlat.com*, 112 F. Supp. 2d 521, 523 (E.D. Va. 2000) (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835 (1990)). Subsection (A)(4) clearly enumerates specific requirements that Plaintiffs must establish as a predicate to the exercise of personal jurisdiction, and the Court cannot ignore those requirements. *See Mehta v. Maddox*, 2017 WL 2264475, at *2 (E.D. Va. May 23, 2017) (finding the exercise of personal jurisdiction pursuant to Subsection (A)(4) improper, because the plaintiff had "not alleged that [the defendant] regularly does or solicits business, engages in any other persistent course of conduct, or derives revenues in Virginia"); *Decision Insights, Inc. v. Quillen*, 2005 WL 2757930, at *7 (E.D. Va. Oct. 21, 2005) (finding the allegation of an injury caused within Virginia, alone, insufficient to confer personal jurisdiction under Subsection (A)(4)).

The other cases to which Plaintiffs cite likewise rely on long-arm statutes and rules that prove distinguishable from Virginia's statute. (Pls.' MicroBilt Resp. at 12 (citing *Cole v. Am. Family Mut. Ins. Co.*, 333 F. Supp. 2d 1038, 1048 (D. Kan. 2004); *Bernard v. Atlas Score, LLC*, 2013 WL 997083, at *2 (D. Or. Mar. 12, 2013); *Andrews v. Prestige Ford Garland Ltd. P'ship*, 2005 WL 3297339 (W.D. Ok. 2005); *Smith v. Cutler*, 504 F. Supp. 2d 1162, 1167 (D.N.M.

18

2007); *Bils v. Nixon, Hargrave, Devans & Doyle*, 880 P.2d 743 (Ariz. Ct. App. 1994)).) All but one of the long-arm statutes or rules in the forum states highlighted by Plaintiffs contain explicit provisions providing for personal jurisdiction to the full extent of the Due Process Clause. *See, e.g.*, Kan. Stat. § 60-308 (providing personal jurisdiction over any person "having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state"); Okla. Stat. tit. 12, § 2004(F) ("A court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States."); Ariz. R. Civ. P. 4.2(a) (providing personal jurisdiction "to the maximum extent permitted by the Constitution of this state and the Constitution of the United States"); Or. R. Civ. P. 4(L) (providing personal jurisdiction "in any action where prosecution of the action . . . is not inconsistent with the Constitution of this state or the Constitution of the United States"). And New Mexico — the only forum state highlighted by Plaintiffs whose long-arm statute does not provide such explicitly broad language — considers the injury caused to a plaintiff to be part of the tortious acts or omissions by a defendant that confer personal jurisdiction, which proves distinguishable from Virginia's distinction between where an injury and the act or omission causing it occurred. *See Cutler*, 504 F. Supp. 2d at 1168 (finding personal jurisdiction proper under New Mexico long-arm statute in similar FCRA case, because "tortious act" under the statute includes the injury caused by the tortious act, which the plaintiff sustained in New Mexico). *Compare* N.M. Stat. § 38-1-16(A) (providing personal jurisdiction over nonresident defendants "as to any cause of action arising from: . . . (3) the commission of *a tortious act within this state*" without concern for where the act or injuries occurred (emphasis added)), *with* Va. Code § 8.01-328.1(A)(3)-(4) (providing personal jurisdiction over a defendant when the defendant caused "tortious injury by an act or omission *in this Commonwealth*" and when the

19

defendant caused "tortious injury in this Commonwealth by an act or omission *outside this Commonwealth*" if other conditions are also satisfied (emphasis added)).

Ultimately, even accepting Plaintiffs' contention that the exercise of personal jurisdiction over Burgess would satisfy the limits of due process, the Court must follow the more stringent limitations contained in Virginia's long-arm statute. Because Plaintiffs have not made a prima facie showing under Virginia's long-arm statute, the Court recommends that Burgess's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 15) be granted and that Count Four as to Burgess be dismissed without prejudice.

### 3. *Plaintiffs Fail to Demonstrate Entitlement to Jurisdictional Discovery.*

Should the Court, as here, find the exercise of personal jurisdiction over Burgess improper, Plaintiffs request that the Court grant jurisdictional discovery. (Pls.' MicroBilt Resp. at 15-16.) Specifically, Plaintiffs seek more time to discover evidence related to: (1) "[t]he nature of the 'data' that Burgess admits to obtaining about Plaintiffs;" (2) "[t]he way in which such data is kept, and how it supposedly differs from the other data MicroBilt houses;" (3) "[t]he method by which Burgess obtained the data;" (4) "[t]he way in which Burgess provided the data to the other Defendants, and what method of contact he used;" (5) "Burgess's knowledge of Defendants' proposed use for the data;" (6) "Burgess's knowledge of Plaintiffs' residences at the time he obtained the data;" and, (7) "Burgess's knowledge of the other Defendants' activities in Virginia." (Pls.' MicroBilt Resp. at 16.) The MicroBilt Defendants respond that jurisdictional discovery should be denied as futile, because Plaintiffs' seek inquiry into aspects of the case that go to the merits, not Burgess's contacts with Virginia. (MicroBilt Reply at 9-10.)

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402

(4th Cir. 2003) (citing *Mylan Labs.*, 2 F.3d at 64).  That said, "district courts 'have broad

discretion in [their] resolution of discovery problems that arise in cases pending before [them],'"

including whether to grant jurisdictional discovery.  *Id.* (quoting *Mylan. Labs.*, 2 F.3d at 64).

Courts generally deny requests for jurisdictional discovery when "a plaintiff offers only

speculation or conclusory assertions about contacts with a forum state," or when the additional

information sought by the plaintiff would not alter the personal jurisdiction analysis.  *Id.*

(collecting cases).

 Here, none of the information sought by Plaintiffs would alter the Court's personal

jurisdiction analysis.  Indeed, the key issue preventing the exercise of personal jurisdiction over

Burgess — namely, Burgess's lack of substantial contacts with Virginia of the kind required by

Subsection (A)(4) — would remain unchanged even with the discovery of evidence favoring

Plaintiffs' position on the factors enumerated in their brief.  (Pls.' MicroBilt Resp. at 16.)

Notably, Plaintiffs' Memorandum in Opposition all but concedes that Burgess's allegedly

injurious conduct occurred outside of Virginia, so any potential that discovery would reveal that

Burgess's conduct occurred within Virginia amounts to mere speculation.  (Pls.' MicroBilt Resp.

at 10.)  Accordingly, the Court recommends that Plaintiffs' request for jurisdictional discovery in

relation to Burgess be denied.

 **C. Martorello's Rule 12(b)(2) Motion**

 In support of his Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 19),

Martorello contends that Plaintiffs' Complaint "is devoid of essentially any detail as to the

residency of any of the Defendants or their relationship with Virginia."  (Martorello Mem. at 3.)

Martorello affirms that while he is a defendant in the BPL Litigation in this District, he resides in

Dallas, Texas.  (Decl. of Matthew Martorello in Supp. of Mot. to Dismiss ("Martorello Decl.")

(ECF No. 22-1) ¶¶ 2-3.)  Martorello avers that he accepted service of Plaintiffs' Complaint through his attorneys in Pennsylvania.  (Martorello Decl. ¶ 4.)  And Martorello denies that he has owned, leased, possessed or maintained real or personal property in Virginia or traveled to Virginia for any reason related to the claims asserted by Plaintiffs.  (Martorello Decl. ¶¶ 5-6.)

As to the substance of Plaintiffs' claims, Martorello asserts that the alleged communications among he, Burgess and Wichtman occurred while he resided in Illinois. (Martorello Decl. ¶ 7.)  At that time, Martorello avers that Burgess and Wichtman were not present in Virginia.  (Martorello Decl. ¶ 8.)  Martorello affirms that he neither received nor used Plaintiffs' consumer reports in the BPL Litigation, nor caused Plaintiffs' reports to be used in the BPL Litigation.  (Martorello Decl. ¶¶ 11-12.)

Martorello argues that Plaintiffs fail to plead facts establishing that he had sufficient minimum contacts with Virginia in relation to the claims asserted against him, precluding the exercise of specific personal jurisdiction over him.  (Martorello Mem. at 5.)  Martorello maintains that his status as a defendant in the BPL Litigation proves insufficient to establish that he purposefully availed himself of Virginia's courts, because Plaintiffs — not he — chose this District for the BPL Litigation.  (Martorello Mem. at 5.)

Plaintiffs respond that, like Burgess, Martorello improperly focuses on the contacts he has not had with Virginia while ignoring those that he has maintained.  (Pls.' Martorello Resp. at 6 (citing *English Boiler & Tube*, 2012 WL 2131895, at *2).)  Plaintiffs maintain that Martorello's contacts with Virginia easily satisfy the requirements of the Due Process Clause. (Pls.' Martorello Resp. at 6-13.)  Specifically, Plaintiffs contend that Martorello purposefully availed himself of the privilege of operating in Virginia by "reaching into the state to commit the acts that form the basis of the claims Plaintiffs Williams, Hengle, and Turnage bring, all of

whom are Virginia residents." (Pls.' Martorello Resp. at 7.)  Plaintiffs argue that Martorello's decision to use their consumer reports for an impermissible purpose during the BPL Litigation constituted conduct calculated to cause injury in Virginia, which satisfies the purposeful availment prong of the personal jurisdiction analysis. (Pls.' Martorello Resp. at 7-8 (citing *Myers*, 238 F.3d at 1072).)  And Plaintiffs cite to the cases on which they also relied in opposition to Burgess's Motion to Dismiss, all of which found the exercise of personal jurisdiction proper based on similar facts. (Pls.' Martorello Resp. at 9-11.)

As for the second prong of the personal jurisdiction analysis, Plaintiffs contend that Martorello's conduct directly relates to their claims. (Pls.' Martorello Resp. at 11.)  Plaintiffs also argue that the exercise of personal jurisdiction over Martorello satisfies the requirement of constitutional reasonableness, because, considering his wealth and the fact that he has obtained capable counsel to represent him, having to litigate in Virginia will not severely disadvantage Martorello. (Pls.' Martorello Resp. at 12.)  Plaintiffs add that Virginia has a strong interest in protecting its citizens' private financial information, and Plaintiffs also claim a strong interest in litigating this case in Virginia, where three of them reside. (Pls.' Martorello Resp. at 13.) Should the Court find the exercise of personal jurisdiction over Martorello improper, Plaintiffs request jurisdictional discovery. (Pls.' Martorello Resp. at 13-14.)

As with Burgess, Plaintiffs do not allege, and the Court does not find, that Martorello is "at home" in Virginia; therefore, the Court will focus its analysis on whether it may exercise specific personal jurisdiction over Martorello. *Mitrano*, 377 F.3d at 406.

### 1. *Plaintiffs Have Made a Prima Facie Showing that the Court May Exercise Personal Jurisdiction Over Martorello Under Virginia's Long-Arm Statute.*

As mentioned, Virginia's long-arm statute distinguishes between tortious injuries caused by acts or omissions in Virginia and tortious injuries caused by acts or omissions in a foreign

state.  Va. Code § 8.01-328.1(A)(3)-(4).  Therefore, in cases involving a nonresident defendant accused of injurious conduct who has maintained no other contacts with Virginia, the location where the defendant's alleged acts or omissions occurred forms the central inquiry in deciding which subsection of Virginia's long-arm statute confers personal jurisdiction.  If the acts or omissions causing the tortious injury occurred outside of Virginia, a plaintiff must satisfy Subsection (A)(4)'s requirement that the defendant have additional contacts with the Commonwealth.  Va. Code § 8.01-328.1(A)(4).  On the other hand, Subsection (A)(3) requires only that the plaintiff's injury and at least one element of the alleged tort occur in Virginia, with no additional contacts required.  *Bochan*, 68 F. Supp. 2d at 698.

  To that end, in Count Four, Plaintiffs allege that Burgess, Martorello and Wichtman violated § 1681b(f) of the FCRA, which prohibits individuals from obtaining or using a consumer report for any purpose unless the report:  (1) "is obtained for a [permissible] purpose;" and, (2) "the purpose is certified" pursuant to § 1681e.  15 U.S.C. § 1681b(f)(1)-(2); (Compl. ¶ 59.)  "When a consumer brings an action for violation of the disclosure provisions of the FCRA . . . such cases are akin to invasion of privacy cases under state law — cases where the plaintiff alleges that the defendant unlawfully invaded the plaintiff's privacy by obtaining information deemed confidential."  *Myers*, 238 F.3d at 1074.  Virginia does not recognize a cause of action for unreasonable intrusion into a plaintiff's private affairs, *WJLA-TV v. Levin*, 564 S.E.2d 383, 394 n.5 (Va. 2002); however, in such cases, the intrusion itself constitutes the tortious conduct, Restatement (Second) of Torts § 652B cmt. b (Am. Law Inst. 2019).  Thus, to the extent that Plaintiffs allege that Martorello obtained their consumer reports without a permissible purpose, Plaintiffs must rely on Subsection (A)(4), because Plaintiffs fail to refute that Martorello obtained their consumer reports (i.e., committed the tortious conduct) outside of

24

Virginia. (Pls.' Martorello Resp. at 7.)  Because Plaintiffs all but concede that Martorello has

maintained no other contacts with Virginia of the type required by Subsection (A)(4), the Court

cannot exercise personal jurisdiction over Martorello based on Martorello's impermissible

obtainment of Plaintiffs' consumer reports.  (Pls.' Martorello Resp. at 7.)

However, § 1681b(f) also prohibits the *use* of consumer reports that have been obtained

without a permissible and certified purpose, including to gain tactical advantages in litigation or

to prepare litigation materials. *See Duncan v. Handmaker*, 149 F.3d 424, 427 (6th Cir. 1998)

("While a lawsuit may give rise to a 'legitimate business need' for a consumer report, trial

preparation generally does not fall within the scope of § 1681b." (citations omitted)); *Chester v.

Purvis*, 260 F. Supp. 2d 711, 718 (S.D. Ind. 2003) (holding that an attorney could be held liable

for using consumer report "for a variety of litigation-related purposes," even though the attorney

did not obtain the report).  In such cases, a defendant's impermissible use proves more analogous

to the misappropriation or defamation of a plaintiff's name and reputation than to an invasion of

the plaintiff's private affairs.  Restatement (Second) of Torts §§ 558, 652C (Am. Law Inst.

2019).  Indeed, in enacting the FCRA, Congress recognized consumer reports as "elaborate

mechanism[s]" upon which the banking system depends to investigate and evaluate "the credit

worthiness, credit standing, credit capacity, *character*, and *general reputation* of consumers,"

requiring Congress to protect their "confidentiality" and "proper utilization."  §§ 1681(a)(1)-(2),

(b) (emphasis added).  As such, consumer reports resemble one's identity, and consumers

possess similar interests in the confidentiality and proper use of their consumer reports as they do

in the confidentiality and proper use of their name, likeness and reputation. *See Gazette, Inc. v.

Harris*, 325 S.E.2d 713, 720 (Va. 1985) ("[T]he law of defamation historically has protected a

basic interest.  The individual's right to personal security includes his uninterrupted entitlement

to enjoyment of his reputation." (citing *Fuller v. Edwards*, 22 S.E.2d 26, 29 (Va. 1942)));

Restatement (Second) of Torts § 560 cmt. a (Am. Law Inst. 2019) (noting that there generally

exists no cause of action for defamation of a decedent's reputation, because defamation involves

an interest in one's reputation that is personal); *id.* § 652C cmt. a (noting that the "interest

protected by the [cause of action for the misappropriation of one's name or likeness] is the

interest of the individual in the exclusive use of his own identity . . . in so far as the use may be

of benefit to him or to others" and likening that interest to a property right).

Unlike invasion of privacy, under a misappropriation or defamation theory, the misuse of

a plaintiff's identity or reputation forms part of the actionable conduct. *See* Va. Code

§ 8.01-40(A) (prohibiting the use of a person's "name, portrait, or picture" for "advertising

purposes or for the purposes of trade" without written consent); *Jordan v. Kollman*, 612 S.E.2d

203, 206 (Va. 2005) (noting that the elements of defamation are "(1) *publication* of (2) an

actionable statement with (3) the requisite intent" (emphasis added)).  By analogy, the

impermissible use of a consumer report constitutes tortious conduct separate from the

impermissible obtainment of the report.  *See McFarland v. Bob Saks Toyota, Inc.*, 466 F. Supp.

2d 855, 867 (E.D. Mich. 2006) (noting that the impermissible use of a consumer report occurs

separately from any impermissible obtainment).

Drawing all reasonable inferences in their favor, Plaintiffs have alleged sufficient facts to

establish the inference that Martorello not only injured them in Virginia, but also committed

tortious acts in Virginia by using their consumer reports in the BPL Litigation.  For one,

Plaintiffs allege that they filed suit against Martorello in this District, which constitutes the

primary relationship between Martorello and Plaintiffs and the only obvious reason why

Martorello would request Plaintiffs' consumer reports.  (Compl. ¶ 33.)  Plaintiffs also recite text

messages between Martorello and Wichtman — counsel in the BPL Litigation at the time — in which they discuss Plaintiffs' reports and suggest the potential use of those reports in the BPL Litigation, noting that Burgess described Plaintiffs as "very active," which Martorello opined sounded "unlike someone harmed." (Compl. ¶ 38.)

Notably, after receiving Plaintiffs' consumer reports, Martorello in fact made arguments in opposition to Plaintiffs' class certification in the BPL Litigation, supporting an inference that Martorello at least considered Plaintiffs' reports in making arguments before this District.[4] (Opp. to Pls.' Mot. for Class Cert. of Claims Against Def. Matt Martorello (3:17cv461-REP; ECF No. 222).) Although mere possession of consumer reports during litigation proves insufficient to hold someone liable for using those reports, *Geiling v. Wirt Fin. Servs., Inc.*, 2014 WL 8473822, at *17 (E.D. Mich. Dec. 31, 2014), *report and recommendation adopted in relevant part*, 2015 WL 1529866 (E.D. Mich. Mar. 31, 2015), referencing consumer reports to prepare final arguments, witness questions and other submissions before a tribunal constitutes a "use" of the reports without a permissible purpose, *see Duncan*, 149 F.3d at 427 (holding that referencing the plaintiffs' consumer reports to "prepare for the litigation the [plaintiffs] initiated" constituted a use of the reports without a permissible purpose); *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) (holding that referencing a litigation opponent's consumer report to determine the opponent's ability to satisfy a judgment constituted an impermissible use of the report); *Allen v. Calvo*, 832 F. Supp. 301, 303 (D. Or. 1993) (noting that requesting a report for

---

[4]     The Court may take judicial notice of the existence of the pleadings in the BPL Litigation and the arguments made therein in resolving Burgess's, Martorello's and Wichtman's 12(b)(2) motions. *See Hill v. Capital One Bank (USA), N.A.*, 2015 WL 468878, at *5 (N.D. Ill. Feb. 3, 2015) (noting that courts may take judicial notice of pleadings when considering 12(b)(2) motions); *Worldwide Subsidy Grp., LLC v. FIFA*, 2014 WL 12631652, at *7 (C.D. Cal. June 9, 2014) (taking judicial notice of the existence of pleadings in another case to resolve 12(b)(2) motion).

use in a criminal investigation constituted an impermissible purpose for furnishing the report).  It therefore follows that by submitting filings in the BPL Litigation that plausibly relied on Plaintiffs' consumer reports, Martorello used Plaintiffs' reports without a permissible purpose, thereby establishing a prima facie showing that Martorello committed injurious acts in Virginia.

Because Plaintiffs have alleged sufficient facts to support the inference that Martorello used their consumer reports in Virginia — and therefore committed injurious acts in Virginia — Plaintiffs may rely on Subsection (A)(3) of Virginia's long-arm statute, which provides for the exercise of personal jurisdiction over a defendant who causes tortious injury in Virginia "by an act or omission in [Virginia]."[5]  Va. Code § 8.01-328.1(A)(3).  Unlike Subsection (A)(4), Subsection (A)(3) does not require that a defendant have other persistent or profitable contacts with Virginia, so the Court may exercise personal jurisdiction over Martorello so long as that exercise satisfies the requirements of the Due Process Clause.  *Id.*

### 2. *Plaintiffs Have Made a Prima Facie Showing that the Exercise of Personal Jurisdiction over Martorello Satisfies the Due Process Clause.*

As mentioned, whether the exercise of specific personal jurisdiction satisfies the requirements of the Fourteenth Amendment's Due Process Clause requires a three-step inquiry.  First, Plaintiffs must establish that Martorello "purposefully availed himself of the privilege of conducting activities" in Virginia.  *Consulting Eng'rs Corp.*, 561 F.3d at 278.  Second, Plaintiffs' claims must "arise out of" Martorello's contacts with Virginia.  *Id.*  Finally, the Court must find

---

[5]      Notably, Plaintiffs' allegations against Martorello prove distinguishable from those against Burgess, because Plaintiffs do not allege facts supporting an inference that Burgess used their consumer reports for an impermissible purpose, only that he impermissibly obtained their reports.  Because the obtainment of the reports occurred outside of Virginia, Plaintiffs must rely on Subsection (A)(4) as the statutory predicate to the exercise of personal jurisdiction over Burgess.

the exercise of personal jurisdiction over Martorello constitutionally reasonable. *Id.* The Court will consider each of these factors in turn.

### i. *Purposeful Availment*

"Th[e] purposeful availment requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotations and citations omitted). The Due Process Clause requires that individuals "have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" *Id.* at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)). "The purposeful-availment test is flexible, and [the] analysis proceeds on a case-by-case basis." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012).

Relevant here, a plaintiff may satisfy the purposeful availment prong by showing that "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can said to be the focal point of the tortious activity." *Carefirst*, 334 F.3d at 398 n.7 (citations omitted). "Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that the principle of fair play and substantial justice is not thereby offended." *Id.* at 397.

Drawing all inferences in their favor, the Court finds that Plaintiffs have made a prima facie showing that Martorello purposefully availed himself of privilege of conducting activities in Virginia. Although Plaintiffs do not refute Martorello's assertion that he has had no other

contacts with Virginia other than his status as a defendant in the BPL Litigation, (Martorello

Decl. ¶¶ 2-6), Plaintiffs' facts establish that Martorello has had sufficient contacts with Virginia

to be on notice that he would be haled to court here, at least in relation to his impermissible use

of Plaintiffs' consumer reports.

Specifically, Plaintiffs allege facts supporting an inference that Martorello used their

consumer reports to gain an advantage in the BPL Litigation.  As mentioned, the BPL Litigation

in this District constituted Martorello's only relationship with Plaintiffs, supporting the inference

that Martorello obtained Plaintiffs' reports for use in the BPL Litigation.  (Compl. ¶ 33;

Martorello Decl. ¶ 2.)  Indeed, Burgess had no role in the BPL Litigation or other apparent

relationship with Plaintiffs that would motivate him to obtain Plaintiffs' consumer reports on his

own initiative.  (*See* Burgess Decl. ¶ 8 (denying that Burgess has had any contacts with anyone

in Virginia, including Plaintiffs).)  And the text messages between Martorello and Wichtman

cited in Plaintiffs' Complaint suggest that Martorello asked Burgess to obtain Plaintiffs'

consumer reports and send them to Wichtman for use in the BPL Litigation, proposing that the

reports supported an argument that Plaintiffs had not suffered any harm.  (Compl. ¶ 38.)

Additionally, at the time of the alleged text messages, Wichtman served as counsel to

Martorello's co-defendants in the BPL Litigation, further implying use in litigation as the

intended purpose for obtaining Plaintiffs' reports.  (Wichtman 12(b)(2) Mem. at 7.)  Importantly,

as mentioned, Martorello in fact made arguments in opposition to Plaintiffs' class certification in

the BPL Litigation.  (Opp. to Pls.' Mot. for Class Cert. of Claims Against Def. Matt Martorello

(Civil No. 3:17cv461, ECF No. 222).)  Moreover, Williams, Turnage and Hengle all reside in

Virginia — a fact that would be reasonably apparent to Martorello from his involvement in the

BPL Litigation — so Martorello had fair warning that his conduct would cause injury in

Virginia. (*See* Williams Decl. ¶ 3 (affirming that Williams resides in Richmond, Virginia); Turnage Decl. ¶ 3 (affirming that Turnage resides in Richmond, Virginia); Hengle Decl. ¶ 3 (affirming that Hengle resides in Chester, Virginia).)

Although Martorello denies that he ever obtained or used Plaintiffs' consumer reports, (Martorello Decl. ¶¶ 11-12), at this early stage, the Court assumes Plaintiffs' credibility and draws all inferences in their favor, *Combs*, 886 F.2d at 676. With this principle in mind, the Court finds that Plaintiffs have made a prima facie showing that Martorello purposefully availed himself of the privilege of conducting activities in Virginia by directing his misuse of Plaintiffs' consumer reports in Virginia, where Plaintiffs felt the brunt of the harm from his conduct.

### ii. *Relatedness*

The second prong of the specific jurisdiction analysis requires that Plaintiffs' claims against Martorello arise out of Martorello's contacts with Virginia. *Consulting Eng'rs Corp.*, 561 F.3d at 278-79 (citations omitted). To that end, Plaintiffs' claim that Martorello impermissibly used their consumer reports directly relates to Martorello's contacts with Virginia, because Martorello's alleged misuse of Plaintiffs' reports constitutes both Martorello's contacts with Virginia and the conduct giving rise to Plaintiffs' impermissible use claim.

As for Plaintiffs' allegation that Martorello obtained their consumer reports without a permissible purpose, the relatedness inquiry becomes more nuanced. Indeed, Plaintiffs do not refute that Martorello allegedly directed Burgess to obtain their reports while outside of Virginia from sources located outside of Virginia. Therefore, Plaintiffs' claim that Martorello impermissibly obtained their consumer reports does not arise directly out of Martorello's contacts with Virginia.

That said, the Fourth Circuit has recognized the doctrine of pendent personal jurisdiction, whereby a district court may hear claims pursuant to which it cannot exercise personal jurisdiction over a defendant so long as those claims arise from a common nucleus of operative fact as the claims over which the court can exercise personal jurisdiction. *ESAB Grp., Inc.*, 126 F.3d at 628. Generally, the exercise of pendent personal jurisdiction relies on the same principles as supplemental jurisdiction, allowing a court to hear state-law claims that are closely related to the federal claims giving rise to the court's jurisdiction. *Id.* However, pendent personal jurisdiction ultimately falls within a district court's "discretionary power, which is exercised in furtherance of 'judicial economy, convenience and fairness to the litigants.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). To that end, this District has found that pendent personal jurisdiction may be exercised over a defendant for related federal, as well as state-law, claims. *See Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 555-56 (E.D. Va. 2009) (concluding after a review of *ESAB Group* and other caselaw that "the Fourth Circuit has approved the exercise of pendent personal jurisdiction over claims arising from a common nucleus of operative fact, whether the additional claim is a state claim or a federal claim"). Accordingly, if Plaintiffs' impermissible obtainment claim shares a common nucleus of operative fact with their impermissible use claim, the Court may exercise personal jurisdiction over Martorello pursuant to both claims.

Here, to establish that Martorello obtained their consumer reports without a permissible purpose, Plaintiffs may present the same evidence needed to establish that Martorello in fact used their reports in the BPL Litigation. Both claims also raise overlapping facts and similar legal issues, including what constitutes a permissible purpose under the FCRA. Therefore, pendent personal jurisdiction applies to Plaintiffs' impermissible obtainment claim.

Because Plaintiffs' impermissible use and impermissible obtainment claims relate to Martorello's contacts with Virginia either directly or through a common nucleus of operative fact, the Court may exercise specific jurisdiction over Martorello pursuant to both claims.

### iii.  *Constitutional Reasonableness*

"The third prong [of the specific jurisdiction analysis] . . . permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Consulting Eng'rs Corp.*, 561 F.3d at 279.  In considering the constitutional reasonableness of personal jurisdiction, courts consider such factors as:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interesting in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* (citing *Burger King*, 471 U.S. at 477).  District courts consider these factors with the goal of ensuring that litigating in the chosen forum "is not 'so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" *CFA Inst.*, 551 F.3d at 296 (quoting *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001) (internal quotations omitted)).

Based on the above factors, the Court finds that the exercise of personal jurisdiction over Martorello would not be so gravely difficult and inconvenient as to place Martorello at a severe disadvantage in this litigation.  Although Martorello lives in Texas, he has been able to secure competent counsel to represent his interests, including local counsel that is well versed in the procedures of this Court.  *See Liberty Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 445 (E.D. Va. 2015) (finding that the Italian defendant's ability to obtain

"competent Virginia counsel" mitigated any burden that the defendant faced by having to litigate in Virginia (citing *CFA Inst.*, 551 F.3d at 296)).  Indeed, Martorello has adequately defended himself in the BPL Litigation in this District.  Importantly, the fact that Martorello directed his tortious conduct at Virginia, where he had reason to know the brunt of the harm from his conduct would be felt, provided fair warning to Martorello that he would be subject to suit here, mitigating any burden that he must now bear.  *Id.* (citing *CFA Inst.*, 551 F.3d at 296).

Furthermore, because Williams, Turnage and Hengle reside in and around Richmond, Virginia has a strong interest in adjudicating this matter and Plaintiffs have a strong interest in obtaining relief in this division, which represents the most convenient forum for their federal claims and the forum where they felt the brunt of the harm from Martorello's alleged conduct. *See Tire Eng'g & Distribution*, 682 F.3d at 305 (finding that Virginia has an interest in ensuring that federal "laws are not violated within its borders").  Litigating this case in Virginia also aligns with the shared interest of the states in obtaining efficient resolution of disputes and furthering social policies, for no state has as much interest in protecting Plaintiffs' rights as Virginia and all states share an interest in protecting their citizens' privacy.

Ultimately, because Plaintiffs have made a prima facie showing that the Court may exercise specific personal jurisdiction over Martorello consistent with Virginia's long-arm statute and the Due Process Clause, the Court recommends that Martorello's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 19) be denied.

### D.    Wichtman's Rule 12(b)(2) Motion

In support of her Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 38), Wichtman contends that she is not at home in Virginia and has not had sufficient contacts with Virginia to establish either general or specific personal jurisdiction.  (Wichtman 12(b)(2) Mem.

34

at 4-8.)  Instead, Wichtman maintains that "[s]he was, at best, a passive recipient who received

an email [from Burgess with Plaintiffs' consumer reports attached] without prompting," which

proves insufficient to support a claim that she obtained Plaintiffs' reports without a permissible

purpose.  (Wichtman 12(b)(2) Mem. at 7; Decl. of Karrie Wichtman ("Wichtman Decl.") (ECF

No. 24-1) ¶¶ 12-14.)  Wichtman likewise denies that she ever used Plaintiffs' consumer reports

in the BPL Litigation and argues that Plaintiffs have alleged insufficient facts to support such an

inference.  (Wichtman 12(b)(2) Mem. at 7; Wichtman Decl. ¶ 15.)  Wichtman notes that she

previously represented BPL and an associated company in the BPL Litigation, neither of which

challenged Plaintiffs' standing or their adequacy as class representatives.  (Wichtman 12(b)(2)

Mem. at 7; Wichtman Decl. ¶¶ 4-5.)  And although Martorello made class-certification-related

arguments in the BPL Litigation, he did so after Wichtman withdrew as counsel.  (Wichtman

12(b)(2) Mem. at 7.)  Finally, Wichtman declares that she resided in Michigan for her whole life

until moving to Wisconsin in March 2019, and she denies that she has had any contacts with

Virginia or Plaintiffs.  (Wichtman Decl. ¶¶ 6-11.)

Plaintiffs respond that the Court may exercise specific personal jurisdiction over

Wichtman, because her contacts with Virginia and the facts alleged by Plaintiffs satisfy the

three-factor personal jurisdiction analysis.  (Pls.' Wichtman 12(b)(2) Resp. at 4-13.)  Plaintiffs

contend that Wichtman purposefully availed herself of the privilege of conducting activities in

Virginia by moving for *pro hac vice* admission in the BPL Litigation before this District.  (Pls.'

Wichtman 12(b)(2) Resp. at 5-6.)  Plaintiffs argue that by moving to practice before this District,

Wichtman "availed herself of one of the most sacrosanct privileges the Commonwealth and this

Court bestow on individuals — the ability to practice law in a court in this jurisdiction."  (Pls.'

Wichtman 12(b)(2) Resp. at 6.)  Plaintiffs add that Wichtman in fact practiced law in Virginia

after this District granted her request for *pro hac vice* admission, including attending a deposition

in Virginia, appearing on filed documents before this District, and attending depositions after she

received the email from Burgess with Plaintiffs' consumer reports attached (the "Burgess

Email"). (Pls.' Wichtman 12(b)(2) Resp. at 6 (citing Civil No. 3:17cv461, ECF Nos. 28, 30, 31,

76); Ex. A to Pls.' Wichtman 12(b)(2) Resp. ("Wichtman Deps.") (ECF No. 44-1).)

Plaintiffs also refute Wichtman's contention that she constituted a mere "passive

recipient" of Plaintiffs' consumer reports, citing to Wichtman's admission that she received the

Burgess Email and her text message response to Martorello stating "Got it.  Thanks!"  (Pls.'

Wichtman 12(b)(2) Resp. at 6 (citing Wichtman Decl. ¶ 12 and Compl. ¶ 38).)  Plaintiffs contend

that Wichtman's admission and the facts alleged in their Complaint support an inference that

Wichtman served as a willing participant in Martorello's plan to use Plaintiffs' consumer reports

in the BPL Litigation, thereby establishing Wichtman's purposeful availment under the *Calder*

effects test.  (Pls.' Wichtman 12(b)(2) Resp. at 6-8.)  And Plaintiffs cite to the same cases on

which they relied in opposing Burgess's and Martorello's Motions, all of which found the

exercise of personal jurisdiction over nonresident defendants proper based on similar facts.

(Pls.' Wichtman 12(b)(2) Resp. at 9.)

As for the final two factors in the specific jurisdiction inquiry, Plaintiffs argue that their

allegations that Wichtman used their consumer reports to gain a litigation advantage in the BPL

Litigation directly relate to her representation of two of the defendants in that litigation.  (Pls.'

Wichtman 12(b)(2) Resp. at 11.)  And Plaintiffs maintain that the exercise of specific jurisdiction

over Wichtman would be constitutionally reasonable, because Wichtman would not be at a

severe disadvantage if forced to litigate in this District, and Virginia and Plaintiffs have a strong

interest in litigating this case here.  (Pls.' Wichtman 12(b)(2) Resp. at 12-13.)

As with Burgess and Martorello, the Court finds that Wichtman is not "at home" in this District, precluding the exercise of general personal jurisdiction; therefore, Plaintiffs must make a prima facie showing of specific personal jurisdiction over Wichtman.

### 1.   *Plaintiffs Have Made a Prima Facie Showing that Virginia's Long-Arm Statute Authorizes the Exercise of Personal Jurisdiction over Wichtman.*

The Court finds that Plaintiffs have made a prima facie showing that Subsection (A)(3) of Virginia's long-arm statute permits the exercise of specific personal jurisdiction over Wichtman, because Plaintiffs' allegations and Wichtman's admissions support an inference that, like Martorello, Wichtman used their consumer reports for an impermissible purpose in the BPL Litigation.

Putting aside Wichtman's contention that she constituted a mere passive recipient of Plaintiffs' consumer reports, (Wichtman Decl. ¶ 12), as mentioned, § 1681b(f) also prohibits the impermissible use of consumer reports, which requires no proof of "any affirmative effort" by Wichtman to obtain Plaintiffs' reports, *McFarland*, 466 F. Supp. 2d at 867. Although Wichtman denies that she ever used Plaintiffs' consumer reports in her capacity as counsel in the BPL Litigation, (Wichtman Decl. ¶ 15), Wichtman concedes that she received the Burgess Email in July 2017, a full year before withdrawing as counsel in August 2018, (Wichtman Decl. ¶¶ 5, 12). In that time, Wichtman signed on to motions and related briefs and participated in at least five depositions, one of which occurred in Virginia. (Pls.' Wichtman 12(b)(2) Resp. at 6; *see, e.g.*, 3:17cv461, ECF Nos. 22-29 (showing Wichtman's signature on motions to dismiss and supporting briefs); Wichtman Deps. at 1-6 (showing Wichtman's appearance on behalf of her clients in five depositions, including one in Tysons Corner, Virginia).)

Notably, one such motion signed by Wichtman moved to dismiss Plaintiffs' claims for lack of standing — albeit without arguing that Plaintiffs suffered no concrete injuries. (*See* Defs.

James Williams, Jr., Gertrude McGeshick, Susan McGeshick, and Giiwegiizhigookway Martin's Br. in Supp. of Their Mot. to Dismiss for Lack of Subject Matter Jurisdiction, Personal Jurisdiction, and Art. III Standing (3:17cv461, ECF No. 29) at 10-14 (arguing that Plaintiffs lacked standing as to the tribal officers, because the officers did not cause their alleged injuries and could not redress them).)  Considering the many arguments for dismissal co-signed by Wichtman after receiving the Burgess Email, the Court can reasonably infer that Wichtman used Plaintiffs' consumer reports at least in deciding which arguments to present before this District. As mentioned, the FCRA does not permit the use of consumer reports to prepare litigation materials, *see Duncan*, 149 F.3d at 427 (holding that referencing the plaintiffs' consumer reports to "prepare for the litigation the [plaintiffs] initiated" constituted a use of the reports without a permissible purpose); *Mone*, 945 F.2d at 308 (holding that referencing a litigation opponent's consumer report to determine the opponent's ability to satisfy a judgment constituted an impermissible use of the report); *Chester*, 260 F. Supp. 2d at 718 (noting several impermissible uses of a consumer report in litigation, including to prepare arguments and questions for witnesses), and, although Wichtman denies that she used Plaintiffs' reports in the BPL Litigation, (Wichtman Decl. ¶ 15), at this early stage, the Court assumes Plaintiffs' credibility and draws all inferences in their favor, *Combs*, 886 F.2d at 676.

Ultimately, the facts alleged by Plaintiffs, admitted by Wichtman and judicially noticed by the Court establish a prima facie showing that Wichtman committed acts in Virginia that injured Plaintiffs in Virginia, permitting the exercise of personal jurisdiction over Wichtman pursuant to Subsection (A)(3) of Virginia's long-arm statute.

2.    *Plaintiffs Have Made a Prima Facie Showing that the Exercise of Personal
      Jurisdiction Over Wichtman Satisfies the Limits of the Due Process Clause.*

For the same reasons that the Court finds the exercise of specific personal jurisdiction

over Martorello consistent with the limitations of due process, the Court finds the exercise of

specific personal jurisdiction over Wichtman consistent as well. As explained above, Plaintiffs'

facts and Wichtman's admissions support an inference that Wichtman purposefully availed

herself of the privilege of conducting activities in Virginia by using Plaintiffs' consumer reports

in the BPL Litigation to make arguments before this District, where she had reason to know that

the harm from her impermissible use would be felt by Plaintiffs, three of whom reside in

Virginia.[6] Although Wichtman cites to *Lans v. Adduci Mastriani & Schaumberg LLP* for the

proposition that a defendant's "participation in litigation-related activities alone . . . does not

subject [the defendant] to personal jurisdiction in the [forum state]," the court in *Lans* found the

defendants' litigation-related conduct to be "insubstantial," primarily because that conduct

related to discovery submissions and editing work. 786 F. Supp. 2d 240, 275 (D.D.C. 2011);

(Wichtman's 12(b)(2) Reply at 4.) By comparison, the pleadings in the BPL Litigation of which

the Court takes judicial notice, together with Plaintiffs' allegations, support the inference that

Wichtman engaged in substantial conduct in the BPL Litigation and, more importantly,

impermissibly used Plaintiffs' consumer reports while engaging in that conduct.

As with Martorello, Plaintiffs' claim that Wichtman impermissibly used their consumer

reports relates directly to her purposeful contacts with Virginia, and Plaintiffs impermissible

---

[6]    Notably, the Court does not rest its purposeful availment analysis on Wichtman's *pro hac vice* admission before this District. Indeed, as Wichtman points out in her reply brief, the Fourth Circuit has found that "'[a]n attorney's entry of a court appearance *pro hac vice* in the forum state, without more, is not a substantial enough contact to permit that court to exercise jurisdiction over his person.'" (Wichtman's 12(b)(2) Reply at 3 (quoting *Sea Marsh Grp., Inc. v. SC Ventures, Inc.*, 1997 WL 173232, at *6 (4th Cir. Apr. 11, 1997) (emphasis supplied)).)

obtainment claim relates under pendent personal jurisdiction.  Finally, Wichtman fails to argue that litigating this case in Virginia would be so gravely inconvenient as to put her at a severe disadvantage.  Indeed, Wichtman has herself practiced before this District, (Wichtman Decl. ¶ 4), and has obtained local counsel well versed in this District's procedures.  Furthermore, Virginia and Plaintiffs have a strong interest in litigating this case in this District, where Plaintiffs felt the brunt of the harm from Wichtman's alleged conduct.

Because Plaintiffs have made a prima facie showing that the Court may exercise personal jurisdiction over Wichtman consistent with Virginia's long-arm statute and the Due Process Clause, the Court recommends that Wichtman's 12(b)(2) Motion (ECF No. 38) be denied.

### III.   VENUE MOTIONS

MicroBilt and Burgess move to transfer the venue of Plaintiffs' claims to the District of New Jersey pursuant to 28 U.S.C. § 1404(a), though having recommended that Burgess's Motion to Dismiss for Lack of Personal Jurisdiction be granted, the Court will focus only on MicroBilt's arguments pertaining to the transfer of venue. (MicroBilt Mem. at 7-15.)  Separately, Martorello moves to dismiss Plaintiffs' claims for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).[7]  (Martorello Mem. at 6-7.)   The Court will consider each motion in turn.

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(3) permits a defendant to challenge the plaintiff's chosen venue as improper.  Fed. R. Civ. P. 12(b)(3).  "To survive a motion to dismiss for improper venue when no evidentiary hearing is held, the plaintiff need only make a prima facie showing of venue." *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 726

---

[7]      Though not formally presented in a motion, Wichtman also contends that Plaintiffs fail to plead sufficient facts to establish proper venue in this District, which the Court will consider alongside Martorello's arguments. (Wichtman 12(b)(2) Mem. at 8 n.4.)

(E.D. Va. 2008) (emphasis removed) (citing *Mitrano*, 377 F.3d at 405).  When ruling on a

12(b)(3) motion, a court need not accept the plaintiff's factual allegations as true and may

consider evidence outside of the pleadings.  *Sucampo Pharms.*, 471 F.3d at 550.

  28 U.S.C. § 1391 governs the proper venue for civil actions before federal district courts.

Pursuant to § 1391, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents
> of the State in which the district is located; (2) a judicial district in which a
> substantial part of the events giving rise to the claim occurred, or a substantial
> part of the property that is the subject of the action is situated; or (3) if there is no
> district in which an action may otherwise be brought as provided in this section,
> any judicial district in which any defendant is subject to the court's personal
> jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3).  "In determining whether events or omissions are sufficiently

substantial to support venue [under Subsection (b)(2)] a court should not focus only on those

matters that are in dispute or that directly led to the filing of the action . . . [but] should review

'the entire sequence of events underlying the claim.'" *Mitrano*, 377 F.3d at 405 (quoting *Uffner

v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001)).

  Even if a plaintiff has chosen a proper venue, a defendant may move to transfer to a

different venue pursuant to 28 U.S.C. § 1404, which provides that "[f]or the convenience of the

parties and witnesses, in the interest of justice, a district court may transfer any civil action to

any other district or division where it might have been brought or . . . to which all parties have

consented." 28 U.S.C. § 1404(a).  "Section 1404(a) 'is intended to place discretion in the district

court to adjudicate motions for transfer according to an individualized case-by-case

consideration of convenience and fairness.'" *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*,

928 F. Supp. 2d 863, 867 (E.D. Va. 2013) (quoting *Stewart Org., Inc. v. Ricoh, Corp.*, 487 U.S.

22, 29 (1988) (citations omitted)).  The burden falls upon the movant to show that transfer of

venue pursuant to § 1404(a) is proper. *Id.* (citing *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)).

For the Court to grant a motion to transfer, unless the parties have consented to the transferee forum, the movant must establish both: (1) that the plaintiff's claims could have been brought in the transferee forum; and, (2) that the interest of justice and convenience of the parties and witnesses warrant transfer to that forum. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). As to the first factor, the movant must show that "at the time of the filing of the action, the [transferee] district court . . . could have exercised personal jurisdiction over the defendants and the district was a proper venue for the action without waiver or consent by the defendants." *Nationwide Mut. Ins. Co. v. The Overlook, LLC*, 2010 2520973, at *3 (E.D. Va. June 17, 2010) (citing *Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 315 (4th Cir. 1984)). After the movant makes this initial showing, the Court next considers whether the convenience of the parties and witnesses and the interest of justice supports the transfer to the movant's desired forum, focusing on four principal factors: "(1) the plaintiff's initial choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Va. Innovation Scis.*, 928 F. Supp. 2d at 868 (citing *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007)).

### B.    Martorello's 12(b)(3) Motion

In support of his Motion to Dismiss for Improper Venue (ECF No. 20), Martorello contends that the statutory section cited by Plaintiffs in their Complaint does not establish this District as the proper venue. (Martorello Mem. at 6.) In their Complaint, Plaintiffs allege that "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)." (Compl. ¶ 3.) Martorello points out that § 1391(b)(1) provides that a civil action may be brought in any district "'in which

any defendant resides, if all defendants are residents of the State in which the district is located.'" (Martorello Mem. at 6 (quoting 28 U.S.C. § 1391(b)(1)).) Because none of the Defendants reside in Virginia, Martorello argues that § 1391(b)(1) does not provide for venue in this District. (Martorello Mem. at 6-7.)

As for the other provisions of § 1391(b), Martorello avers that "nowhere in the Complaint do Plaintiffs identify where the parties are located or where the alleged acts giving rise to their claims occurred." (Martorello Mem. at 7.) Martorello maintains that the Compliant contains no allegations that Martorello ever traveled to Virginia, conducted business in Virginia or engaged in conducting in Virginia that gave rise to Plaintiffs' claims. (Martorello Mem. at 7.) And because Plaintiffs have not demonstrated that no other district exists in which venue would be proper, Martorello contends that Plaintiffs cannot rely on § 1391(b)(3). (Martorello Mem. at 7.)

Plaintiffs respond that venue is proper in this District pursuant to § 1391(b)(2), because Plaintiffs felt the brunt of the harm caused by Martorello's alleged conduct in Virginia. (Pls.' Martorello Resp. at 15.) Plaintiffs cite to cases finding that the location of a plaintiff's alleged injury satisfies the "substantial part of the events" requirement under § 1391(b)(2). (Pls.' Martorello Resp. at 15 (citing *Seidel v. Kirby*, 296 F. Supp. 3d 745, 753 (D. Md. 2017); *Del Zotto v. Universal Physician Servs., LLC*, 214 F. Supp. 3d 499, 504 (D.S.C. 2016); *Lary v. Doctors Answer, LLC*, 2013 WL 987879, at *4 (N.D. Ala. Mar. 8, 2013)).) Plaintiffs add that the Court must consider their claims as a whole, not only their sole claim against Martorello, in determining the proper venue. (Pls.' Martorello Resp. at 16.) As to their other claims, Plaintiffs argue that they felt the brunt of the harm from MicroBilt's impermissible disclosure of their consumer reports in Virginia, where three of them reside, and that Williams received her allegedly incomplete consumer report at her home in Richmond. (Pls.' Martorello Resp. at 16.)

43

Should the Court find their chosen venue improper, Plaintiffs request transfer to the District of New Jersey pursuant to 28 U.S.C. § 1406(a). (Pls.' Martorello Resp. at 16.)

The Court finds that this District constitutes a proper venue for Plaintiffs' claims. Although Martorello focuses on Plaintiffs' incorrect citation to the relevant statutory authority and lack of factual allegations to support venue in this District, the Court may consider evidence outside of the pleadings and need not rely on Plaintiffs' Complaint to determine the proper venue. *Sucampo Pharms.*, 471 F.3d at 550. Considering the evidence as a whole, including Plaintiffs' allegations, the Court agrees with Plaintiffs that § 1391(b)(2) provides for venue in this District.

As the Fourth Circuit noted in *Mitrano*, trial courts should look to the entire sequence of events leading up to a plaintiff's claims, not only the conduct or omissions that led directly to the dispute in question, to determine whether § 1391(b)(2) provides for venue in the plaintiff's chosen forum. 377 F.3d at 405. Based on this standard, Plaintiffs have made a prima facie showing of proper venue. For one, Plaintiffs' claims relate to the BPL Litigation in this District, in which, as discussed above, Plaintiffs allege facts sufficient to support the inference that Martorello and Wichtman used their consumer reports to prepare litigation materials. Three Plaintiffs also reside in Virginia, where they sustained the harm from Defendants' allegedly unlawful conduct. *See Myers*, 238 F.3d at 1074 (finding that plaintiffs sustain the injury from the impermissible disclosure and obtainment of their consumer reports wherever their "sensibilities" reside); *Seidel*, 296 F. Supp. 3d at 753-54 (holding that a substantial part of the events leading up to a tort claim — in that case, defamation — occur where the plaintiff sustains the injury); *Sadighi v. Daghighfekr*, 36 F. Supp. 2d 267, 276 (D.S.C. 1999) (finding that the plaintiff's "ultimate injury in [South Carolina] could constitute a substantial part of the events

giving rise to the civil conspiracy claim"). These connections prove sufficient to establish venue under § 1391(b)(2).

Although Martorello focuses on the events that occurred outside of Virginia, he fails to recognize the entire sequence of events leading up to Plaintiffs' claims, much of which occurred in Virginia. (Martorello Mem. at 6-7.) Under § 1391(b)(2), "it is possible for venue to be proper in more than one judicial district," *Mitrano*, 377 F.3d at 405, so whether some or a majority of the events leading to Plaintiffs' claims occurred in another district proves inconsequential. Instead, the Court must consider whether a sufficient number of events occurred in this forum, and Plaintiffs have satisfied that question. Accordingly, the Court recommends that Martorello's Motion to Dismiss for Improper Venue (ECF No. 20) be denied.

### C.    MicroBilt's Motion to Transfer

In support of its Motion to Transfer Venue (ECF No. 15), MicroBilt argues that the United States District Court for the District of New Jersey constitutes the preferred forum for the adjudication of Plaintiffs' claims. (MicroBilt Mem. at 9.) MicroBilt contends that Plaintiffs could have brought their claims in the District of New Jersey, because: (1) MicroBilt and Burgess both reside there; (2) Martorello allegedly contacted Burgess in New Jersey to obtain the consumer reports about which Plaintiffs complain, which confers personal jurisdiction over Martorello in New Jersey; and, (3) Plaintiffs' allegations regarding Wichtman's conduct provide a stronger basis for the District of New Jersey to exercise personal jurisdiction over her. (MicroBilt Mem. at 9-10.)

As for whether the convenience of the parties and witnesses and the interest of justice support transfer to the District of New Jersey, MicroBilt contends that Plaintiffs' choice of venue should be given less weight, because Plaintiffs' claims have "virtually no" connection to this

District. (MicroBilt Mem. at 11.) Instead, because Plaintiffs' claims relate to MicroBilt's procedures and databases, all of which are located in New Jersey, MicroBilt argues that the District of New Jersey represents a more convenient forum for the parties and witnesses. (MicroBilt Mem. at 12; MicroBilt Decl. ¶ 11.) MicroBilt avers that the trip from its headquarters in Princeton, New Jersey to Richmond, Virginia for depositions and court proceedings "will disrupt MicroBilt's business and be a substantial burden," because its officers and employees cannot traverse the distance between the two locations in one day. (MicroBilt Mem. at 12; MicroBilt Decl. ¶¶ 15-17.) And MicroBilt contends that the interest of justice warrants transfer, because the District of New Jersey has the strongest connections to this case. (MicroBilt Mem. at 14.)

Plaintiffs respond that their choice of venue should receive substantial weight, because three of them reside in this District. (Pls.' MicroBilt Resp. at 17.) Plaintiffs add that a substantial part of the events leading up to their claims also occurred in this District, including the brunt of the harm from Defendants' alleged conduct, which entitles their choice of venue to substantial weight. (Pls.' MicroBilt Resp. at 17.)

Plaintiffs likewise refute that the District of New Jersey represents a more convenient forum. (Pls.' MicroBilt Resp. at 18.) For one, Plaintiffs note that the presumption favoring the deposition of corporate officers in the district of the corporation's headquarters alleviates MicroBilt's concern that its officers and employees will have to travel to Virginia for depositions. (Pls.' MicroBilt Resp. at 18.) Plaintiffs also point to the relative financial strength of the parties, observing that Plaintiffs have limited financial resources compared to MicroBilt's presumed capacity to absorb travel and litigation costs and Martorello and Wichtman's need to travel regardless of the forum. (Pls.' MicroBilt Resp. at 18-19.) Plaintiffs emphasize that

46

MicroBilt's conclusory assertions regarding the burdens that it would face litigating in this District lack sufficient detail to overcome the substantial weight afforded to their home forum. (Pls.' MicroBilt Resp. at 19.)

As for MicroBilt's argument that the District of New Jersey would allow easier access to MicroBilt's databases and corporate documents, Plaintiffs contend that such an argument "carries no weight in this digital age." (Pls.' MicroBilt Resp. at 19.) Plaintiffs reason that MicroBilt could extract any necessary information from the database and electronically transfer it without the need for physical examination of the database's hardware. (Pls.' MicroBilt Resp. at 20.) Finally, Plaintiffs argue that the interest of justice weighs against transfer, because Virginia has strong interest in protecting its citizens, and Plaintiffs have a strong interest in litigating this case in this District. (Pls.' Microbilt Resp. at 21.)

As a preliminary matter, the Court finds that MicroBilt has established that Plaintiffs could have brought their claims in the District of New Jersey. Indeed, in their response to Martorello's 12(b)(3) Motion, Plaintiffs concede that the District of New Jersey constitutes an alternative forum for their claims. (*See* Pls.' Martorello Resp. at 16 (requesting transfer to the District of New Jersey if the Court found venue in this District improper).) Therefore, the Court will focus its analysis on whether the convenience of the parties and witnesses and the interest of justice warrant transfer to the District of New Jersey.

### 1.   *Plaintiffs' Choice of Venue Should be Given Substantial Weight.*

A plaintiff's choice of forum "is typically entitled to substantial weight, especially where the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action." *Heinz Kettler GmbH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 667 (E.D. Va. 2010). However, "the weight accorded to this choice 'varies with the significance of the contacts

between the venue chosen by plaintiff and the underlying cause of action.'" *Va. Innovation Scis.*, 928 F. Supp. 2d at 869 (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)). "Even when the plaintiff sues in its home forum, that fact is not by itself controlling and the weight of that factor depends on the nexus tying the case to the forum." *Gebr. Brasseler GmbH & Co. KG v. Abrasive Tech., Inc.*, 2009 WL 874513, at * 2 (E.D. Va. Mar. 27, 2009) (citing *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1257 (E.D. Va. 1988)). Ultimately, "[f]or this factor to strongly weigh against transfer, a plaintiff must prove a legitimate connection to the district." *Pragmatus*, 769 F. Supp. 2d at 995.

The Court finds that Plaintiffs have presented sufficient facts to establish a "legitimate connection" to this District, entitling their choice of venue to substantial weight. For one, three of the four Plaintiffs —Williams, Turnage and Hengle — reside in and around Richmond, Virginia. (*See* Williams Decl. ¶ 3 (affirming that Williams resides in Richmond, Virginia); Turnage Decl. ¶ 3 (affirming that Turnage resides in Richmond, Virginia); Hengle Decl. ¶ 3 (affirming that Hengle resides in Chester, Virginia).) Therefore, Plaintiffs felt the brunt of the harm from Defendants' alleged conduct in this District. Plaintiffs' allegations also relate to the BPL Litigation in this District and, as discussed, Plaintiffs have alleged sufficient facts to support an inference that Martorello and Wichtman used their consumer reports in that litigation, establishing a nexus between this District and at least some of the unlawful conduct alleged by Plaintiffs.

Although MicroBilt contends that the District of New Jersey has stronger connections to Plaintiffs' claims, whether a plaintiff's choice of venue deserves substantial weight does not rely on the potential connections between the plaintiff's claims and another district, but rather the existence of a legitimate connection between the plaintiff's choice of venue and the case at hand.

48

*Pragmatus*, 769 F. Supp. 2d at 995.  Plaintiffs have established such a connection, entitling their choice of this District to substantial weight.

### 2. *Convenience to the Parties and Witnesses and Access to Sources of Proof Does Not Favor Transfer.*

Because the Court has afforded substantial weight to Plaintiffs' choice of venue, the Court will not disturb that choice "unless the balance of hardships clearly favor transfer." *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 623-24 (E.D. Va. 2002).  To that end, MicroBilt must demonstrate that litigating in the Eastern District of Virginia would be substantially inconvenient, not simply that the District of New Jersey represents a more convenient forum. *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 n.15 (E.D. Va. 2005).  "[W]hen plaintiffs file suit in their home forum, convenience to parties, rarely, if ever, operates to justify transfer," for transfer will not operate only to "shift the balance of inconvenience." *Baylor Heating & Air Conditioning*, 702 F. Supp. at 1259.

As for inconvenience to the witnesses, "[t]he party asserting witness inconvenience 'has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." *Va. Innovation Scis.*, 928 F. Supp. 2d at 870 (quoting *Koh*, 250 F. Supp. 2d at 636).  "The convenience of non-party witnesses should be afforded greater weight [than party witnesses] in deciding a motion to transfer," as should the convenience of "'witnesses whose testimony is central to a claim and whose credibility is likely to be an important issue.'" *Rambus, Inc.*, 386 F. Supp. 2d at 718 (citing and quoting *Koh*, 250 F. Supp. 2d at 636-37).

MicroBilt has not demonstrated that the balance of hardships strongly favors transfer to the District of New Jersey.  For one, because this District constitutes the home forum for three Plaintiffs, transferring this case to New Jersey would operate only to shift the inconvenience

49

from MicroBilt to Plaintiffs, who, relative to MicroBilt, are less able to afford the cost of

litigating in a foreign forum. (*See* Williams Decl. ¶ 9 (affirming that Williams does not work

and receives limited income from Social Security disability benefits); Turnage Decl. ¶ 7

(affirming that Turnage does not have "significant disposable income"); Hengle Decl. ¶ 7

(same).) MicroBilt affirms that litigating in this District would cause "substantial costs in the

form of los[t] time and disruption," because its technological associates and management will be

forced to leave its Princeton, New Jersey headquarters "for depositions and hearings," (Microbilt

Decl. ¶ 17), but MicroBilt identifies only two specific witnesses who would be called to testify

regarding MicroBilt's databases, policies and procedures, one of whom serves as MicroBilt's

President and Chief Executive Officer and the other as its head of Information Technology,

(MicroBilt Decl. ¶¶ 15-16). Both witnesses work for MicroBilt — a party in this matter — so

any inconvenience to them receives less weight. *Rambus, Inc.*, 386 F. Supp. 2d at 718.

Moreover, as Plaintiffs point out, depositions of officers and agents of a nonresident corporate

defendant presumptively should occur in the district of the corporation's principal place of

business, mitigating any inconvenience to MicroBilt. *In re Outsidewall Tire Litig.*, 267 F.R.D.

466, 471-72 (E.D. Va. 2010); (Pls.' MicroBilt Resp. at 18.)

As for MicroBilt's assertion that the District of New Jersey represents a more convenient

forum, because the sources of proof — namely, its database and relevant documents — are

located there, the Court finds such an argument inapposite. (MicroBilt Mem. at 12.) Nothing in

Plaintiffs' allegations indicates that a physical inspection of the database facilities will be

necessary. And MicroBilt can transfer relevant documents via electronic discovery or mail

courier, especially considering the relative proximity of New Jersey to Virginia, so the Court

affords only little weight to the availability of documents in New Jersey. *See Newman v.*

50

*Advanced Tech. Innovation Corp.*, 2012 WL 1414859, at *3 (E.D. Va. Apr. 20, 2012) (giving little weight to the location of relevant payroll and time records in Massachusetts, because the records could "easily be transmitted electronically" (citations omitted)); *Schrader-Bridgeport Int'l, Inc. v. Cont'l Auto. Sys. US, Inc.*, 2012 WL 503602, at *6 (W.D. Va. Feb. 15, 2012) ("[S]ince most records and documents now can be transported easily and exist in miniaturized or electronic form . . . their location is entitled to little weight." (quotations omitted)).

Perhaps the strongest factor now weighing in MicroBilt's favor will be if the District Court adopts this Report and Recommendation in its entirety and Burgess becomes a non-party witness, whose convenience receives greater consideration. *Rambus, Inc.*, 386 F. Supp. 2d at 718. Yet, Burgess has not affirmed that he personally will suffer hardship from appearing in this forum. In fact, Burgess still works as a consultant to MicroBilt, who will remain a party in this suit, so considerations of his convenience receive less weight. (Burgess Decl. ¶ 4); *see Anderson v. Century Prods. Co.*, 943 F. Supp. 137, 149 (D.N.H. 1996) ("[I]f appearance of witnesses can be secured regardless of the forum's location through court order or persuasion by an employer who is a party to the action, [convenience to those witnesses] becomes less important.").

Ultimately, MicroBilt fails to establish sufficient inconvenience from having to litigate Plaintiffs' claims in this District; therefore, the Court finds that neither convenience to the parties and witnesses nor access to sources of proof weighs in favor of transfer.

### 3. *The Interest of Justice Does Not Weigh in Favor of Transfer at this Stage in the Proceedings.*

In determining whether the interest of justice warrants transfer, courts consider factors unrelated to convenience, including:

> (1) the pendency of a related action, (2) the court's familiarity with the applicable law, (3) docket conditions, (4) access to premises that might have be viewed, (5) the possibility of an unfair trial, (6) the ability to join other parties, (7) the

51

possibility of harassment, and (8) the interest of having local controversies
decided at home.

*Va. Innovation Scis.*, 928 F. Supp. 2d at 872 (citing *Pragmatus*, 769 F. Supp. 2d at 996).

"Ultimately, the interest of justice factor 'encompasses public interest factors aimed at systemic

integrity and fairness,' with the most prominent considerations being 'judicial economy and the

avoidance of inconsistent judgments.'" *Id.* (quoting *Byerson v. Equifax Info. Servs., LLC*, 467 F.

Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotations omitted)).

As for the first factor — related actions — neither party points to a related case in the

District of New Jersey, whereas the ongoing BPL Litigation in this District also includes

Plaintiffs and Martorello and relates to Martorello and Wichtman's alleged misuse of Plaintiffs'

consumer reports, weighing in favor of Plaintiffs' chosen venue. Because Plaintiffs claims arise

under federal law, the second factor — familiarity with the substantive law — weighs in favor of

neither venue.

Regarding docket conditions, the latest data from the federal judiciary shows that in the

Eastern District of Virginia, the average time from the filing of a civil action to its disposition is

5.8 months, with an average of 11.8 months between filing and trial. U.S. Cts., Federal Court

Management Statistics (June 30, 2019), https://www.uscourts.gov/statistics-reports/federal-court-

management-statistics-june-2019. By comparison, litigants in the District of New Jersey wait an

average of 5.0 months between the filing of a civil action and its disposition, and 47.9 months

between filing and trial. *Id.* Although the District of New Jersey has a slightly shorter period

between filing and disposition, the period between filing and trial clearly militates against

transfer.

As for the need for access to facilities for physical inspection, as mentioned, Plaintiffs'

claims likely will not require physical inspection of MicroBilt's databases or any other premises,

so that factor weighs in favor of neither venue.  Neither does MicroBilt argue that it, or any other Defendant, would receive an unfair trial or face harassment if forced to litigate in this District, so those factors prove inconsequential to the Court's analysis.

However, the ability to join other parties could weigh strongly in favor of transfer, because if the District Court adopts this Report and Recommendation in its entirety, Burgess could not be joined as a party in this venue for lack of personal jurisdiction, while he would be considered at home and therefore subject to suit in New Jersey.  (*See* Burgess Decl. ¶ 1 (affirming that Burgess resides in Princeton, New Jersey).)  If Plaintiffs chose to maintain simultaneous suits against Burgess in the District of New Jersey and the other Defendants in this District, a factfinder in this District could conclude that MicroBilt furnished Plaintiffs' consumer reports to Burgess for a permissible purpose, while a factfinder in the District of New Jersey could conclude that Burgess obtained Plaintiffs' consumer reports for an impermissible purpose, thereby risking inconsistent results between districts.  If Plaintiffs pursued a separate suit against Burgess, jurisprudential considerations would also militate in favor of transfer, because transfer would allow for one trial to resolve common issues between all Defendants.

The above notwithstanding, the Court cannot speculate as to alternative scenarios that would favor transfer, especially considering Plaintiffs' affirmation that litigating in New Jersey would be too burdensome given their limited resources and physical impairments.  (Williams Decl. ¶¶ 9-10; Turnage Decl. ¶¶ 6-7; Hengle Decl. ¶¶ 6-8.)  Moreover, the interest in having local controversies decided at home weighs heavily against transfer, for three Plaintiffs reside and felt the harm from Defendants' alleged conduct in this District.  Virginia also has a stronger interest in protecting Plaintiffs from violations of federal law than New Jersey, with which Plaintiffs have no relationship.

Considering these factors, the Court recommends that MicroBilt's Motion to Transfer (ECF No. 15) be denied without prejudice, allowing MicroBilt to file a renewed motion to transfer should the District Court adopt this Report and Recommendation, and should Plaintiffs decide to file suit against Burgess in the District of New Jersey.

## IV.    RULE 12(b)(6) MOTIONS

Having established this District as the proper venue for Plaintiffs' claims against Martorello and Wichtman, the Court may consider Martorello and Wichtman's motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will consider the motions in turn.

### A.    Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs.*, 7 F.3d at 1134.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a

cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## B.     Martorello's 12(b)(6) Motion

In support of his Motion to Dismiss for Failure to State a Claim (ECF No. 21), Martorello contends that Plaintiffs' allegations fail to support a plausible inference that he either obtained or used their consumer reports for an impermissible purpose. (Martorello Mem. at 7-11.) Specifically, Martorello argues that Plaintiffs have not alleged sufficient facts to plausibly infer that Martorello ever "obtained" their consumer reports, alleging only that Burgess sent Plaintiffs' reports directly to Wichtman, who did not represent Martorello in the BPL Litigation. (Martorello Mem. at 9.) As for Plaintiffs' claim that Martorello used their consumer reports for an impermissible purpose, Martorello maintains that Plaintiffs' allegations amount to mere conclusory assertions, failing to allege what information from Plaintiffs' consumer reports Martorello used and how he used it. (Martorello Mem. at 9-10.)

Martorello also argues that Plaintiffs have failed to allege sufficient facts showing that he acted willfully or negligently in violating the FCRA, shielding him from liability under the Act. (Martorello Mem. at 10.) Martorello contends that Plaintiffs have made only conclusory

assertions regarding his mental state, which proves insufficient to survive a motion to dismiss. (Martorello Mem. at 10.)

Plaintiffs respond that their Complaint more than satisfies the "liberal pleading standards" applied in federal court. (Pls.' Martorello Resp. at 17.) Plaintiffs challenge Martorello's suggestion that they must allege the exact time, place and manner in which Martorello received and used their reports, arguing that Martorello's motion amounts to a challenge to the merits of Plaintiffs' claims without the benefit of discovery. (Pls.' Martorello Resp. at 17-18.) And Plaintiffs assert that they have alleged sufficient facts to support a plausible claim that Martorello willfully, or at least negligently, violated the Act. (Pls.' Martorello Resp. at 18-19.) Should the Court find that Plaintiffs failed to state a claim against Martorello, Plaintiffs request leave to amend their Complaint. (Pls.' Martorello Resp. at 19.)

As mentioned, Count Four of Plaintiffs' Complaint alleges that Martorello, Wichtman and Burgess obtained and used Plaintiffs' consumer reports for an impermissible purpose — namely, to gain an advantage in the BPL Litigation — in violation of 15 U.S.C. § 1681b(f). (Compl. ¶¶ 58-62.) To state a claim under § 1681b(f), a plaintiff must plead facts plausibly showing that: "(1) there was a consumer report; (2) obtained or used by the defendant; (3) without a permissible purpose as defined in § 1681b(a)(1)-(6); and (4) the defendant acted with the specified mental state." *Miller v. Dish Network, LLC*, 326 F. Supp. 3d 51, 63-64 (E.D. Va. 2018) (internal quotations and citations omitted). Martorello does not challenge that the information obtained by Burgess constituted a consumer report, (Martorello Mem. at 9);

therefore, the Court will focus on whether Plaintiffs have plausibly alleged that Martorello

obtained or used their reports without a permissible purpose and with the requisite state of mind.[8]

To that end, the Court finds that Plaintiffs have plausibly alleged that Martorello obtained

their reports without a permissible purpose. Specifically, the text messages between Martorello

and Wichtman cited by Plaintiffs support the inference that Martorello requested the reports from

Burgess, because Martorello, not Burgess, informed Wichtman that Burgess would send the

reports, and Burgess otherwise had no apparent connection to the BPL Litigation such that he

would obtain the reports on his own initiative. (Compl. ¶¶ 33, 38.)  Although Martorello's text

messages to Wichtman suggest that Burgess sent the reports only to Wichtman and not

Martorello, (*see* Compl. ¶ 38 ("[Burgess] . . . is sending you[, Wichtman,] the plaintiffs[']

subprime credit history.")), a defendant may be found to have "obtained" a report by directing

another party to obtain it, *see Jones v. Federated Fin. Res. Corp.*, 144 F.3d 961, 965-66 (6th Cir.

1998) (finding that principles of vicarious liability in tort law apply to the FCRA); *Okeke-*

*VonBatten v. Greater Wash. Mortg. LLC*, 766 F. Supp. 2d 43, 46 (D.D.C. 2011) (same); *Berman*

*v. Parco*, 986 F. Supp. 195, 212-13 (S.D.N.Y. 1997) (implying that the defendant could be liable

under the FCRA for obtaining a consumer report through "operatives").  And Martorello's

adversarial relationship with Plaintiffs in the BPL Litigation — his only relationship with

Plaintiffs — plausibly suggests that Martorello directed Burgess to obtain Plaintiffs' consumer

---

[8]      Although Martorello does not specifically challenge Plaintiffs' allegation that the
information obtained by Burgess constituted a consumer report under the Act, the Court finds
that Plaintiffs plausibly allege as much.  Specifically, Martorello's first text to Wichtman
suggests that the reports obtained by Burgess included information on Plaintiffs' credit history,
which fits squarely within the FCRA's definition of "consumer report." § 1681a(d)(1); (Compl.
¶ 38.)

reports without a permissible purpose (i.e., for use in the BPL Litigation). *Duncan*, 149 F.3d at 427; *Chester*, 260 F. Supp. 2d at 718; (Compl. ¶ 33.)

Moreover, as discussed above, Plaintiffs' facts and the pleadings in the BPL Litigation, of which the Court takes judicial notice, support a plausible inference that Martorello used Plaintiffs' consumer reports without a permissible purpose. Courts have read § 1681b(f) either as prohibiting the use of consumer reports for any purpose when the reports "were initially furnished in violation of the Act," *Geiling v. Wirt Fin. Servs., Inc.*, 2015 WL 1529866, at *8 (E.D. Mich. Mar. 31, 2015), or as prohibiting the use of consumer reports without a permissible purpose, regardless of the initial purpose for obtaining the report, *McFarland*, 466 F. Supp. 2d at 858.[9] Under either interpretation, Martorello's text messages to Wichtman, and the fact that Martorello's only relationship with Plaintiffs stemmed from their adversarial posture in the BPL Litigation, directly support the inference that Martorello, through Burgess, disseminated without a permissible purpose consumer reports to Wichtman that Martorello had also directed Burgess to obtain without a permissible purpose. (Compl. ¶¶ 33, 38.) Such an impermissible dissemination of the reports constitutes a use under § 1681b(f), establishing a plausible right to relief. *See Geiling*, 2015 WL 1529866, at *8 (holding that dissemination of an impermissibly obtained consumer report constitutes a "use" of the report).

---

[9]      Strictly interpreted, § 1681b(f) prohibits the use of a consumer report for "any purpose" unless the initial user of the report obtained it for a permissible and properly certified purpose. 15 U.S.C. § 1681b(f)(1)-(2). Such a reading would allow individuals to use a report for any purpose so long as the initial user obtained the report for a permissible and certified purpose. Accordingly, some courts have read § 1681b(f) as prohibiting any impermissible use of a report, regardless of how the report was initially obtained. The Court need not determine which reading to follow, because Plaintiffs allege that Martorello both obtained and used their consumer reports without a permissible purpose, which violates both interpretations of § 1681b(f).

In addition, Plaintiffs facts coupled with the pleadings in the BPL Litigation plausibly suggest that Martorello used Plaintiffs' consumer reports to prepare litigation materials, which constitutes a separate impermissible use. For one, Plaintiffs recite text messages between Martorello and Wichtman — counsel in the BPL Litigation at the time — in which they discuss Plaintiffs' reports and suggest the potential use of those reports in the BPL Litigation, proposing that the reports made Plaintiffs appear "unlike someone harmed." (Compl. ¶ 38.) Notably, after Burgess obtained Plaintiffs' consumer reports, Martorello in fact made arguments in opposition to Plaintiffs' class certification in the BPL Litigation, supporting an inference that Martorello actively considered — and did not merely possess — Plaintiffs' reports in making arguments before this District.[10] *Duncan*, 149 F.3d at 427; *Mone*, 945 F.2d at 308; *Allen*, 832 F. Supp. at 303; (Opp. to Pls.' Mot. for Class Cert. of Claims Against Def. Matt Martorello (3:17cv461-REP; ECF No. 222).) Accordingly, Plaintiffs have stated a plausible right to relief for both Martorello's impermissible obtainment and his impermissible use of their consumer reports.

However, to recover against Martorello for his alleged violations of § 1681b(f), Plaintiffs must also allege facts plausibly suggesting that Martorello either willfully or negligently violated the FCRA. 15 U.S.C. §§ 1681n, 1681o; *see Alston v. Freedom Plus*, 2018 WL 770384, at *6 (D. Md. Feb. 7, 2018) (noting that "[a]lthough a state of mind, such a willfulness, can be alleged generally, a party still needs to plead sufficient facts to support a plausible inference of the alleged mental state" (citing Fed. R. Civ. P. 9(b)) (additional citations omitted)). Willful violations of the FCRA require evidence of either a knowing or reckless breach of a statutory

---

[10]     The Court may take judicial notice of the existence of the pleadings in the BPL Litigation and the arguments made therein when resolving a 12(b)(6) motion. *See Penn v. 1st S. Ins. Servs., Inc.*, 324 F. Supp. 3d 703, 713 (E.D. Va. 2018) (noting that a court "'may consider official public records'" when deciding a motion to dismiss (quoting *Stoney Glenn, LLC v. S. Bank & Tr. Co.*, 944 F. Supp. 2d 460, 464 (E.D. Va. 2013) (citations omitted))).

duty. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-60 (2007). In determining whether a defendant acted recklessly, the Supreme Court has instructed that the common law understanding of the term "reckless" should govern, requiring proof of an "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). In the context of § 1681b(f), factual allegations indicative of willfulness include the targeted acquisition of credit reports and the subsequent concealment of the defendant's access to the report. *Alston*, 2018 WL 770384, at *6 (citing and discussing *Smith v. LexisNexis Risk Sols., Inc.*, 2014 WL 866413 (N.D. Ill. Mar. 5, 2014) and *Martin v. Asset Acceptance, LLC*, 2012 WL 3042524 (N.D. Ill. July 25, 2012)).

Alternatively, a plaintiff alleging negligent violations of the FCRA must plead facts showing actual damages from the defendant's violation(s). *See* 15 U.S.C. § 1681o(a)(1) (allowing recovery of only actual damages for negligent violations of the FCRA). To that end, allegations of mental anguish from the invasion of the plaintiff's privacy prove sufficient to survive a motion to dismiss. *Alston*, 2018 WL 770384, at *6.

Here, Plaintiffs have pled sufficient facts to support a plausible inference that Martorello acted both willfully and negligently in violating § 1681b(f). For one, Plaintiffs allege that Martorello had an adversarial relationship with them in the BPL Litigation, representing his only relationship with Plaintiffs and a plausible reason why Martorello would request their consumer reports. (Compl. ¶ 33.) Moreover, when informing Wichtman that Burgess would send her a copy of Plaintiffs' reports, Martorello referred to a potential use for the reports, noting that Plaintiffs had active credit histories that appeared "unlike someone harmed," which plausibly suggests that Martorello requested Plaintiffs' reports with a specific purpose in mind. (Compl. ¶ 38.) And when Williams requested a copy of her consumer report from MicroBilt in March

2018, the report omitted any mention of Burgess's access to her report, supporting a plausible inference that Martorello, in coordination with others, concealed his allegedly injurious conduct. (Compl. ¶¶ 39-41.)  Together, these allegations plausibly suggest that Martorello acted at least recklessly in violating the FCRA.  As for Plaintiffs' claim that Martorello negligently violated the FCRA, their allegation of mental and emotional anguish from the violation of their privacy proves sufficient, at this stage, to support such a claim. *Alston*, 2018 WL 770384, at *6; (Compl. ¶ 60.)

Because Plaintiffs have alleged sufficient facts to support the plausible inference that Martorello obtained and used their consumer reports without a permissible purpose and with either a reckless or negligent mental state, the Court recommends that Martorello's Motion to Dismiss for Failure to State a Claim (ECF No. 21) be denied.

### C.    Wichtman's 12(b)(6) Motion

In support of her Motion to Dismiss for Failure to State a Claim (ECF No. 40), Wichtman contends that Plaintiffs fail to plausibly allege that she did anything more than passively receive their consumer reports, which falls short of the necessary conduct under § 1681b(f).  (Wichtman 12(b)(6) Mem. at 4-5.)  Wichtman argues that Plaintiffs likewise fail to allege that she used their consumer reports, because the clients that Wichtman represented in the BPL Litigation never challenged Plaintiffs' standing or their adequacy as class representatives, which represent the only uses of Plaintiffs' reports alleged in the Complaint.  (Wichtman 12(b)(6) Mem. at 5-6.)

Plaintiffs respond that the allegations in their Complaint support the inference that Wichtman constituted more than a mere passive recipient of their consumer reports, citing the text messages between Martorello and Wichtman in which Wichtman thanked Martorello for having Plaintiffs' reports sent to her.  (Pls.' Wichtman 12(b)(6) Resp. at 4.)  Plaintiffs also refer

to the joint defense agreement between Wichtman's clients and Martorello, which Plaintiffs argue demonstrates the close coordination between Martorello and Wichtman. (Pls.' Wichtman 12(b)(6) Resp. at 4.)  Finally, Plaintiffs refute that they must identify every way that Wichtman used their consumer reports, arguing that only discovery can reveal such information, and noting that after Wichtman received their reports, she actively participated in the BPL Litigation, which proves sufficient at this stage to deny Wichtman's Motion. (Pls.' Wichtman 12(b)(6) Resp. at 5-6.)

        The Court agrees with Plaintiffs that, at this early stage, Plaintiffs have pled sufficient facts to plausibly allege that Wichtman both obtained and used their consumer reports without a permissible purpose.  As Plaintiffs note in their opposition to Wichtman's Motion, Wichtman's text message response to Martorello suggests that she actively requested, or formed part of the joint plan to obtain, Plaintiffs' consumer reports. (Pls.' Wichtman 12(b)(6) Resp. at 4; *see* Compl. ¶ 38 (quoting text message from Wichtman to Martorello stating "Got it! Thanks." in response to Martorello's text message that Burgess would be sending Plaintiffs' credit histories to her).)  Indeed, in response to Wichtman's text message thanking him for having the reports sent to her, Martorello stated "at your service," which supports the plausible inference that Wichtman requested the reports or worked with Martorello to have them obtained.  (Compl. ¶ 38.)  Although "mere passive receipt of [a consumer report] would not be enough to satisfy the statutory element that [the defendant] 'use or obtain' a consumer report," *Phillips v. Grendahl*, 312 F.3d 357, 367 (8th Cir. 2002), *abrogated on other grounds by Safeco Ins.*, 551 U.S. at 57, Plaintiffs' facts plausibly suggest that Wichtman did not merely receive Plaintiffs' reports and in fact requested them in coordination with Martorello.

Even if Plaintiffs' facts fail to allege that Wichtman obtained their consumer reports, Wichtman may also be liable under § 1681b(f) for using Plaintiffs' consumer reports in violation of the Act. As discussed in the Court's personal jurisdiction analysis, the pleadings in the BPL Litigation of which the Court takes judicial notice plausibly suggest that Wichtman used Plaintiffs' consumer reports in preparing submissions to the Court, which constitutes an impermissible use of those reports. (*See, e.g.*, 3:17cv461, ECF Nos. 22-29 (showing Wichtman's signature on motions to dismiss and supporting briefs).) Although the Court finds no specific argument regarding Plaintiffs' credit history in the submissions that Wichtman co-signed, courts considering the use of consumer reports in litigation have not required that a defendant use a consumer report directly, so long as the defendant relied on the report in making litigation decisions, including which arguments to present to the tribunal. *See Duncan*, 149 F.3d at 427 (holding that referencing the plaintiffs' consumer reports to "prepare for the litigation the [plaintiffs] initiated" constituted a use of the reports without a permissible purpose); *Mone*, 945 F.2d at 308 (holding that referencing a litigation opponent's consumer report to determine the opponent's ability to satisfy a judgment constituted an impermissible use of the report); *Chester*, 260 F. Supp. 2d at 718 (noting several impermissible uses of a consumer report in litigation, including to prepare arguments and questions for witnesses). Because Wichtman co-signed submissions in the BPL Litigation that presented multiple grounds for the dismissal of Plaintiffs' claims, including arguments against Plaintiffs' standing, the Court can plausibly infer that Wichtman used Plaintiffs' consumer reports to prepare arguments for those submissions, and therefore impermissibly used the reports.

Because Plaintiffs have alleged sufficient facts, together with the pleadings in the BPL Litigation, to state a plausible right to relief against Wichtman under § 1681b(f), the Court

recommends that Wichtman's Motion to Dismiss for Failure to State a Claim (ECF No. 40) be denied.[11]

## V.    CONCLUSION

For the reasons set forth above, the Court recommends that:  (1) that Burgess's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 15) be GRANTED and Count Four of Plaintiffs' Complaint as to Burgess be DISMISSED WITHOUT PREJUDICE; (2) that Burgess's Motion to Dismiss for Insufficient Service of Process be DENIED AS MOOT; (3) that MicroBilt's Motion to Transfer Venue (ECF No. 15) be DENIED WITHOUT PREJUDICE; (4) that Martorello's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 19), Motion to Dismiss for Improper Venue (ECF No. 20) and Motion to Dismiss for Failure to State a Claim (ECF No. 21) be DENIED; and, (5) that Wichtman's Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 38) and Motion to Dismiss for Failure to State a Claim (ECF No. 40) be DENIED.

Let the Clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure**

---

[11]    Although Wichtman does not challenge the sufficiency of Plaintiffs' allegations regarding her state of mind in violating the Act, for the same reasons stated in the Court's analysis of Martorello's 12(b)(6) Motion, the Court finds that Plaintiffs have sufficiently pled facts supporting Wichtman's civil liability under either a willfulness or negligence theory.

shall bar you from attacking on appeal the findings and conclusions accepted and adopted

by the District Judge except upon grounds of plain error.

_____/s/_____
David J. Novak
United States Magistrate Judge


Richmond, Virginia
Date:  September 23, 2019